UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASPEN TECHNOLOGY, INC., <br>             Plaintiff, <br><br> v. <br><br> F/V SOFTWARE, L.L.C., <br>             Defendant. | Civil Action <br> No. 04-11830 |

**MEMORANDUM OF REASONS IN SUPPORT OF**
**MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT**

Pursuant to Fed.R.Civ.P.12(b) and Local Rule 7.1, defendant F/V Software, L.L.C. ("F/V") moves this court to dismiss the Complaint for Declaratory Judgment filed by Aspen Technology, Inc. ("Aspen").  In this memorandum, F/V shows that the court should exercise its discretion to dismiss the complaint as contrary to important public policies and that the court lacks subject matter jurisdiction and *in personam* jurisdiction over F/V.

**Introduction**

Invoking the Declaratory Judgment Act, 28 U.S.C. § 2201, and this court's diversity jurisdiction, Aspen asks this court for a declaratory judgment that it did not breach a contract it entered into with defendant F/V and that any failure by Aspen to perform that contract did not cause F/V any damage.  Complaint, par. 8.  Because Aspen's complaint is anticipatory litigation brought for improper tactical purposes, a practice that has been repeatedly condemned in this court and in other federal courts, F/V asks the court to exercise its discretion to dismiss the complaint.  Additionally, F/V shows that at the time Aspen filed its complaint, no controversy existed within the meaning of the Declaratory Judgment Act, and that the court lacks subject matter jurisdiction.  F/V further shows that this court lacks *in personam* jurisdiction over it.

The contract that Aspen brings to this court is a registration rights agreement ("RRA") that Aspen entered into with F/V and others as part of its acquisition of a software business ("the PAI Business") developed and owned by Computerized Processes Unlimited, L.L.C. in Louisiana. F/V attaches the RRA as Exhibit A hereto. As part of its acquisition of the PAI Business, Aspen issued shares of its stock valued at $11.3 million to F/V and others, with a contractual undertaking by Aspen to register those shares with the Securities and Exchange Commission on June 15, 2001, the date that it acquired the PAI Business, and to cause that registration to become effective at the earliest practicable date. Although Aspen attempted to register F/V's stock on June 15, 2001, it was not in fact eligible to do so, and Aspen withdrew its registration some five months later and belatedly re-started the registration process. F/V's inability to market the Aspen shares during this extended period caused it damage. A fuller account of the dispute is set forth in the Complaint for Breach of Contract filed by F/V in the United States District Court for the Eastern District of Louisiana, attached as Exhibit B hereto, and in the affidavit of David Erath, attached as Exhibit C hereto.

### **Prior Litigation**

The RRA at issue was the subject of litigation in the United States District Court for the Eastern District of Louisiana in the matter styled *Michael S. Benbow, et al. v. Aspen Technology, Inc.*, C.A. No. 02-2881. The *Benbow* plaintiffs were also parties to the RRA and alleged damage from their inability to market shares of stock issued to them by Aspen. In that litigation, Aspen was represented by the same attorneys that appear here, and the *Benbow* plaintiffs were represented by the attorneys that appear here *pro hac vice* for F/V.

In that litigation, Mr. David Erath, an employee and part owner of defendant herein F/V, and who is mentioned in paragraphs 16 and 17 of Aspen's complaint herein, was deposed by

2

Aspen in New Orleans on January 13, 2004 and testified at trial on January 26, 2004. In that litigation, on June 23, 2004, a sixty-day dismissal order was entered by the court, it having been advised by counsel for the parties of a settlement and compromise. In that litigation, on July 22, 2004, a stipulation by plaintiffs and defendant for judgment that all claims be dismissed was filed.

### F/V's Letter to Aspen

Subsequent to the dismissal of the *Benbow* litigation, F/V retained the firm of Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, L.L.C. to advise it in regard to its potential rights under the RRA and to assert those rights as appropriate. On August 11, 2004, counsel for F/V wrote to Aspen the letter partially quoted in paragraph 3 of the complaint. Defendant attaches a complete copy of the letter as Exhibit D hereto. In that letter, counsel for F/V requested a telephone call from Aspen counsel "in the hope that this matter can be resolved without litigation." Aspen did not reply to this letter in any fashion.

### Aspen's Anticipatory Complaint for Declaratory Judgment

On August 23, 2004, Aspen filed its Complaint for Declaratory Judgment in this court. Aspen gave no notice, formal or informal, of its intent or action to sue F/V to counsel for F/V who had sent the letter of representation to Aspen in the hope that the matter could be resolved without litigation. Aspen made no service on counsel for F/V, and, instead, Aspen attempted to serve F/V through its registered agent for service of process in Louisiana. On August 30, 2004, Aspen mailed to F/V counsel (who had not yet appeared) a copy of the Local Rule 7.3 certificate that Aspen had failed to file with its complaint. Other than its Complaint for Declaratory Judgment filed in this court, Aspen has made absolutely no communication to F/V concerning its position on the performance or non-performance of the RRA or the proper measure of damages.

3

**Argument**

I. **This court should refuse to hear Aspen's complaint.**

Under the Declaratory Judgment Act, a federal court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Company,* 515 U.S. 277, 286 (1995). If a case does not serve the public policies of the Declaratory Judgment Act, the court may dismiss it even if it is within its jurisdiction. *Id.* at 284*; EMC Corp. v. Norand,* 89 F.3d 807, 814 (Fed. Cir. 1996); *Waters Corp. v. Hewlett-Packard Co.*, 999 F. Supp. 167, 174 (D. Mass. 1998). The court may dismiss the declaratory judgment action even where it was "first filed" among competing cases. *EMC v. Norand Corp.,* 89 F.3d at 813; *EMC Corp. v. Roland*, 916 F. Supp. 51, 53 (D. Mass. 1996)*; Davox Corp. v. Digital Systems International, Inc.,* 846 F. Supp. 144, 147 (D. Mass. 1993). The court may even decline to resolve jurisdictional questions and then exercise its discretion to dismiss an action as inappropriate under the Declaratory Judgment Act. *EMC v. Norand Corp.,* 89 F.3d at 809; *EMC v. Roland,* 916 F. Supp. at 53. The defendant has no burden, and even in the absence of action by a defendant, "a federal court … must independently satisfy itself about the suitability of granting declaratory relief...." *Lexington Insurance Company v. The City of Phoenix, Arizona,* No. 96-10319*,* 1996 WL 463672, at *3 n. 4, (D. Mass. July 31, 1996) (citing *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 498 n. 11 (1st Cir. 1992)).

Aspen unabashedly states that it filed its Complaint for Declaratory Judgment in response to F/V's letter of August 11, 2004. Complaint, par. 3-8. Such a use of the Declaratory Judgment Act while refusing to pursue any extrajudicial dispute resolution in order to secure a favored forum and negotiation advantage has been universally condemned by federal courts, including this district court. See, *e.g., EMC Corp. v. Norand Corp.,* 89 F.3d 807 (Fed. Cir. 1996)*; Waters*

*Corp. v. Hewlett-Packard Co.,* 999 F. Supp 167 (D.Mass. 1998)*; Lexington Insurance Company v. The City of Phoenix, Arizona,* 1996 WL 463672 (D. Mass. July 31, 1996); *Davox Corp. v. Digital Systems International, Inc.,* 846 F.Supp (D. Mass. 1998)*; Hudson County News Company v. Metro Associates, Inc.,* 141 F.R.D. 386 (D. Mass. 1992).

      **A.**    **Aspen's anticipatory complaint is inconsistent with public policies that favor extrajudicial dispute resolution.**

*Davox*, was a patent case, and the plaintiff filed a complaint for declaratory judgment after receiving written inquiries from a potential claimant for infringement. This court exercised its discretion to dismiss the complaint because "it would be contrary to important public policies discouraging needless litigation to reward Davox's race to the courthouse by giving preference to its choice of forum." 841 F. Supp. at 146. The court explained that "it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." *Id.* at 148. The court pointed out that the then new Local Rules, adopted to implement the Civil Justice Delay and Expense Reduction Plan mandated by the Civil Justice Reform Act of 1990, were "designed to…promote settlement and alternative dispute resolution." *Id.* at 149. The court concluded that "[i]n light of the present, strong public policy discouraging unnecessary litigation, it would be inconsistent with the reformed legal culture and conduct the Act and the Plan seek to promote for this court to exercise discretionary jurisdiction." *Id*. Accord *EMC Corp. v. Norand Corp.,* 89 F.3d at 814-15 (jurisdiction not exercised after declaratory judgment action filed in response to letter requesting further negotiations, citing *Davox* and numerous cases from other jurisdictions); *Waters Corp. v. Hewlett-Packard Co.,* 999 F. Supp. at 174 (declaratory judgment complaint dismissed when filed as part of heavy-handed response to single letter, citing *EMC Corp. v. Norand* and *Davox*); *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398-99 (D. Mass. 1996)

5

(declaratory judgment action allowed where suit was filed but not served, and plaintiff took affirmative steps to resolve matter without litigation, citing *Davox* with approval).

The incongruity of this court exercising discretionary jurisdiction over a declaratory judgment action that was filed in response to a request for negotiations would be palpable. Before F/V could file this motion to dismiss, Local Rule 7.1(a)(2) required "counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Before there can even be a scheduling conference in this case, Local Rule 16.1(c) requires that "the plaintiff shall present written settlement proposals to all defendants." Local Rule 16.4(a) states "[t]he judicial officer shall encourage the resolution of disputes by settlement or other alternative dispute resolution programs." Further, Local Rule 26.3 permits the phasing of discovery "[i]n order to facilitate settlement." These policies and rules make it especially inappropriate to reward a party who refuses even to discuss an extrajudicial resolution of a potential dispute. Far from promoting an extrajudicial resolution of its dispute with F/V, Aspen's actions produced two federal lawsuits. Surely, this court should not "abet" a party that files a dubious declaratory judgment action to resolve a contract dispute that it has refused to even discuss with the other contracting party.

> **B.    Aspen's anticipatory complaint is a prohibited tactical ploy to secure a favored forum and negotiation advantage.**

F/V is the "natural plaintiff" in the dispute over Aspen's nonperformance of its contractual obligations to F/V, and Louisiana has more substantial contacts with this dispute than does Massachusetts. Most importantly, this court and all federal courts condemn the use of the declaratory judgment action as a tactical device to achieve a preferred forum. This court was especially harsh in its criticism of the misuse of the declaratory judgment action for forum shopping in *Lexington Insurance Company v. The City of Phoenix, Arizona,* 1996 WL 463672

6

(D. Mass. July 31, 1996).  In that case, in response to a threatening letter, the insurer filed suit in Massachusetts seeking a declaratory judgment as to its liability under an insurance contract.  The court found that the declaratory judgment plaintiff's purpose was to achieve its "preference in choice of forum" and that "permitting this suit to go forward would be contrary to the public interest." *Id*. at *2.  The court said that the plaintiff "proves itself too clever by half," *id.* at *1, had used a "litigation ploy," *id.* at *2, and that this was "sharp practice and it deserves the name." *Id.*

Aspen's Complaint for Declaratory Judgment, F/V's Complaint for Breach of Contract, and the attached affidavit of David Erath reveal the nature of the dispute and its Louisiana nexus. Although Aspen's principal place of business may be Cambridge, Massachusetts, as recited in paragraph 9 of its complaint, Aspen does business in Louisiana and has an office in the Eastern District of Louisiana, although it may be in the process of closing that office.  As stated in paragraph 10 of Aspen's complaint, defendant F/V's principal place of business is New Orleans, Louisiana.  F/V conducts no business in Massachusetts.

Frantzen/Voelker Investments, L.L.C., mentioned in paragraph 11 of Aspen's complaint, has its principal place of business in New Orleans, Louisiana.  It conducts no business in Massachusetts.  Computerized Processes Unlimited, L.L.C., mentioned in paragraphs 15, 24, 25 and 26 of Aspen's complaint, has its principal place of business in Louisiana and conducts no business in Massachusetts.  Advantage Capital Management, mentioned in paragraphs 15 and 18 of the complaint, has its principal place of business in Louisiana and conducts no business in Massachusetts.

Mr. David Erath, mentioned in paragraphs 16 and 17 of Aspen's complaint, is a resident of the state of Louisiana, is employed in the state of Louisiana, and conducts no business in the

7

state of Massachusetts. Mr. Crichton Brown, mentioned in paragraph 18 of Aspen's complaint, is a resident of the state of Louisiana, is employed in Louisiana, and conducts no business in Massachusetts.

The law firm of Sher Garner Cahill Richter Klein McAlister & Hilbert, L.L.C. may be "one of the top law firms in New Orleans," as alleged in paragraph 19 of Aspen's complaint, but it has no office in Massachusetts, and none of its attorneys is admitted to practice in Massachusetts.

Coppermine LLC, mentioned in paragraphs 24, 25 and 26 of Aspen's complaint, was a Louisiana entity created to facilitate the transfer of the Louisiana assets of CPU to Aspen. It conducted no business in Massachusetts.

The Securities and Exchange Commission and it employees, mentioned in paragraphs 2, 31, 36-46, and 52-59 of Aspen's complaint, reside in Washington, D. C.

The "negotiations," mentioned in paragraphs 15-18 of Aspen's complaint, consisted of two sit-down meetings with representatives of CPU and Aspen. The first was on May 4, 2001 in Houston, Texas, and the second on May 16, 2001 in Metairie, Louisiana. An agreement in principle was reached at the May 16, 2001 meeting. The work of drafting of the RRA and related agreements done by attorneys for F/V and by Aspen's attorneys was done by telephone and e-mail from their respective law offices in New Orleans and Boston. No one for CPU or F/V ever traveled to Massachusetts in connection with the transaction.

The "closing" of the transaction, mentioned in paragraphs 24-27 of Aspen's complaint, was done in multiple counterparts, with signatures exchanged by telefax. Signatures for F/V were faxed from New Orleans to Boston, and signatures for Aspen were faxed from Boston to New Orleans.

A federal court should defer to the right of an injured party to choose the forum in which to litigate the action. "The declaratory judgment remedy is *not a tactical device* whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse." *Hudson County News Company*, 141 F.R.D. at 392, quoting *State Farm Fire and Casualty Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C. 1988) (emphasis in original). In *EMC v. Roland*, the court also cited the unfairness of depriving the natural plaintiff of her choice of forum, and stated that the "Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions," and "[i]ndeed, the misuse of the Declaratory Judgment Act to gain procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action." 916 F. Supp at 55 (citations and internal quotations omitted).

Aspen alleges nothing in its complaint to justify its use of the Declaratory Judgment action. In *Lexington*, the court noted that the "true plaintiff" had been made defendant in the declaratory judgment action, and that "[s]uch a pre-emptive strike misuses the declaratory relief action. Declaratory Judgment properly is provided where the natural defendant in a potential legal controversy is injured by the 'uncertainty and insecurity' of a delay in its resolution." 1996 WL 463672 at *2 (citations omitted). The court said "there was not a scintilla of evidence that Lexington was motivated to bring suit by any concern about the possibility of uncertainty or delay: no investment decision or other business ramifications were claimed to turn on the outcome of this fairly routine dispute..." *Id.* Aspen alleges no such ramifications nor even the possibility of uncertainty or delay. Aspen's only reason to file this declaratory judgment action was to preempt the natural plaintiff of its choice of forum and thus to secure tactical advantage in any litigation and the associated and inevitable attempted negotiation of a resolution. By its

9

tactical action, Aspen merely sought to increase the prospective cost of litigation to F/V before engaging in any effort to resolve this contract dispute.

## II.    No actual controversy existed when Aspen filed its declaratory judgment complaint.

Under the Declaratory Judgment Act, jurisdiction exists only if there is an "actual controversy" between the parties.  28 U.S.C. § 2201; *Waters Corp. v. Hewlett-Packard Co., supra* at 171 (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 272-73, (1941)).  Further, the court must examine the facts existing at the time the complaint is filed to determine whether an "actual controversy" existed at that time.  *Id.*  Thus, the court must consider whether F/V's letter to Aspen created an actual controversy even though it expressly requested discussion in the hope of avoiding litigation.

Of course, every assertion of rights carries with it the possibility of litigation.  As noted by the Federal Circuit in a patent controversy: "No patent owner with any sense would open negotiations by assuring his opposite party that he does not intend to enforce his rights under any circumstances."  *EMC Corp. v. Norand Corp.,* 89 F.3d at 811.  The test in this circuit is whether the declaratory judgment plaintiff has a "reasonable apprehension" that litigation will ensue. *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc*., 439 F.2d 871, 874 (1st Cir. 1971).  The mere possibility of a lawsuit coupled with other possible results is not sufficient "reasonable apprehension" unless the potential lawsuit has a chilling effect on the activities of the declaratory judgment plaintiff.  As stated by this court:

> Courts have found a plaintiff's showing of a reasonable apprehension of facing a lawsuit by the declaratory judgment defendant to be insufficiently substantial where the defendant's communication of the possibility of a lawsuit to the plaintiff is phrased in the equivocating language of potentialities or is susceptible to varying interpretations.  It is only where the potential lawsuit by the declaratory judgment defendant is likely to

> chill a plaintiff's activities that courts will require a less substantial showing of reasonable apprehension to find the dispute ripe.

*Hudson County,* 141 F.R.D. at 390-91 (footnote and internal citations omitted).

Here, Aspen received a letter from a party, a part owner of which had been a witness in litigation that settled, stating that it had rights under the same contract that had been litigated and requesting discussion to avoid litigation. When F/V sent its letter to Aspen, its basic query was what, if anything, was Aspen willing to do for it, since its rights seemed analogous to those of the *Benbow* plaintiffs. It is only Aspen's refusal to discuss the issues or to offer any explanation at all of its position to F/V that created a reasonable apprehension of litigation, and indeed spawned two federal lawsuits. Aspen has not alleged that F/V's letter was "likely to chill" its activities. Aspen's anticipatory complaint for declaratory judgment was premature and made at a time when no actual controversy existed between the parties. Accordingly, the court should find it lacks subject matter jurisdiction.

### III. F/V lacks sufficient contacts with this forum to justify the assertion of *in personam* jurisdiction.

Aspen's jurisdictional allegations are conclusory and sparse. It alleges that F/V "transacted business within Massachusetts...derived substantial benefit and revenue from contracts negotiated in, executed in, and governed by the laws of the Commonwealth of Massachusetts...and threatened litigation against a Massachusetts resident while in Massachusetts." Complaint, par. 13. F/V challenges the factual basis of Aspen's jurisdictional allegations. Those allegations are not controlling, and the jurisdictional facts are for this court to find. *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 395 (D. Mass. 1996) (citing *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)).

11

F/V's contacts with Massachusetts all relate to the sale of a Louisiana business, by a Louisiana corporation with no business ties to Massachusetts, to Aspen, which does business in Louisiana and Massachusetts. Aspen's representatives inspected this business in Louisiana and negotiated its purchase in Houston, Texas, and Metairie, Louisiana. No one for F/V or the Louisiana business being sold ever traveled to Massachusetts, although telephone calls and e-mail were placed to and from Louisiana and Massachusetts. The RRA and related contracts were executed in multiple counterparts in Louisiana and Massachusetts. The RRA does provide that Massachusetts law shall apply. Aspen issued shares of its stock as consideration for the purchase price and delivered those shares to Louisiana. The damages that are at issue were suffered by a Louisiana company in Louisiana when those shares turned out to be unmarketable.

F/V did send the letter of August 11, 2004 to Aspen's office in Massachusetts, but such an action rarely would constitute sufficient contact to justify the imposition of personal jurisdiction. *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F. Supp. 2d 99, 110 (D. Mass. 2000) (citing *Nova Biomedical Corp. v. Moller*, 629 F.2d 190 (1st Cir. 1980)).

Aspen does not allege that F/V is subject to the exercise of this court's general jurisdiction; therefore, the court must determine whether F/V's contacts with Massachusetts are sufficient to support the exercise of specific jurisdiction. As summarized by this court:

> Specific personal jurisdiction can be asserted over a defendant only if: (1) the claim "directly relates to or arises from the defendant's contacts with the forum"; and (2) "the contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." If these two requirements are met, then (3) the court must look at the "overall reasonableness of the exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction."

*Levin v. Harned*, 292 F. Supp. 2d 220, 225 (D. Mass. 2003) (internal citations omitted).

Analysis of the first requirement, the "relatedness inquiry," varies with the cause of action asserted.  *Id.*  In a breach of contract action (and presumably a declaratory action seeking an evaluation of performance of a contract), the contract itself does not automatically establish the required contact; instead, the court must apply a "contract-plus analysis."  *U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001).  "Thus, 'prior negotiations and contemplated future consequences, along with…the parties' actual course of dealing…must be evaluated in determining whether the defendant' has minimum contacts with the forum."  *Id.* at 621 (citing and quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Here, nothing in the prior negotiations demonstrates any meaningful contact by F/V with Massachusetts.  Aspen went to Louisiana to buy a Louisiana business.  Further, nothing in the contemplated future consequences of the contract demonstrates contact by F/V with Massachusetts.  Compare the "franchise contract, which envisioned a twenty-year relationship and continuing contacts with the forum" in *Burger King Corp.*, 471 U.S. at 479, with the RRA that delivered stock to the defendant in Louisiana and obligated Aspen to register that stock with the SEC in Washington, D.C. on the day of execution and "to cause such [r]egistration…to be declared effective by the Commission at the earliest practicable date."  Exhibit A, par. 2.3(a)(i).

Further, whatever contacts F/V had with Massachusetts in entering into the RRA, Aspen's claim does not directly relate or arise from those contacts.  Aspen's complaint for declaratory judgment does not put at issue the confection of the contract; instead, it seeks judgment on Aspen's performance of the contract.  That performance or non-performance is not directly related to or arise from F/V's contacts with Massachusetts; those issues relate to Aspen's actions or non-actions in Massachusetts and Washington, D.C.  The "relatedness inquiry" is not met.

The second factor, "purposeful availment," is also absent in F/V's conduct. As stated by this court:

> The purposeful availment test requires consideration of whether the defendant's contacts with the forum represent a purposeful availment of the privilege of conducting activities in the forum, thereby involving the benefits and protections of its laws in making the defendant's involuntary presence in the state courts foreseeable.

*Levin,* 292 F.Supp.2d at 229. F/V never sought to conduct activities in Massachusetts. Indeed, F/V's activities are not at issue in this case at all. As previously stated, it is Aspen's activity in the performance or non-performance of the RRA that is at issue.

Finally, in consideration of the "gestalt" factors to determine whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice," F/V reiterates the arguments previously made in support of the court's exercise of discretion to decline to hear the declaratory judgment complaint. Aspen has not played fair. In *Levin, supra*, this court pointed out in its gestalt analysis that the plaintiffs' "choice of forum is entitled to deference." *Id.* at 230. Here, the natural plaintiff is F/V and its choice of forum should be entitled to deference, and this supports a finding that there is insufficient contact with Massachusetts to support *in personam* jurisdiction over it.

**Conclusion**

For all these reasons, F/V prays that Aspen's Complaint for Declaratory Judgment be dismissed and that Aspen be ordered to pay all costs of these proceedings.

                F/V SOFTWARE, L.L.C.
                By its attorneys,

                  /s/ Marc J. Goldstein
                Ruth T. Dowling (BBO #645568)
                Marc J. Goldstein (BBO #636228)
                PALMER & DODGE LLP
                111 Huntington Avenue
                Boston, MA 02199
                (617) 239-0100
                Fax: (617) 227-4420

                Of Counsel:

                Eugene G. Taggart (LA Bar No. 12627)
                Terrence G. O'Brien (LA Bar No. 10147)
                TAGGART, MORTON, OGDEN, STAUB, ROUGELOT & O'BRIEN, LLC
                1100 Poydras Street, Suite 2100
                New Orleans, LA 70163-2100
                (504) 599-8500
                Fax: (504) 599-8501