UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASPEN TECHNOLOGY, INC.,<br>                            Plaintiff,<br>v.<br>F/V SOFTWARE, L.L.C.,<br>                            Defendant. | Civil Action<br>No. 04-11830 |

### AFFIDAVIT OF DAVID J. ERATH

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

**BEFORE ME**, the undersigned Notary Public, and in the presence of the undersigned competent witnesses, personally came and appeared:

### DAVID J. ERATH

of the full age of majority and resident of Orleans Parish, State of Louisiana, who, being duly sworn, did depose and say:

My name is David J. Erath. I reside at 772 Kerlerec Street, New Orleans, Louisiana 70116. I am an employee and part owner of F/V Software, L.L.C. ("F/V"), the defendant in this action. I am the David J. Erath mentioned in paragraphs 16 and 17 of the complaint. I am employed in the state of Louisiana. I conduct no business in the state of Massachusetts, and never traveled to the state of Massachusetts for any business with Aspen.

I am familiar with many of the persons and events mentioned in the complaint for declaratory judgment.



1

F/V is a Louisiana limited liability corporation that was an investor in Computerized Processes Unlimited, L.L.C. ("CPU"), another Louisiana limited liability corporation. CPU developed a software process, the PAI Business, that had value.

Although Aspen's principal place of business may be Cambridge, Massachusetts, as recited in paragraph 9 of the complaint, Aspen does business in Louisiana and has or had an office in the Eastern District of Louisiana.

As stated in paragraph 10 of the complaint, defendant F/V's principal place of business is New Orleans, Louisiana. It conducts no business in Massachusetts.

Frantzen/Voelker Investments, L.L.C., mentioned in paragraph 11 of the complaint, has its principal place of business in New Orleans, Louisiana. It conducts no business in Massachussetts.

Computerized Processes Unlimited, L.L.C., mentioned in paragraphs 15, 24, 25 and 26, has its principal place of business in Louisiana and conducts no business in Massachusetts.

Advantage Capital Management, mentioned in paragraphs 15 and 18 of the complaint, has its principal place of business in Louisiana and conducts no business in Massachusetts.

Mr. Crichton Brown, mentioned in paragraph 18 of the complaint, is a resident of the state of Louisiana, is employed in Louisiana, and conducts no business in Massachusetts.

Coppermine LLC, mentioned in paragraphs 24, 25 and 26 of the complaint, was a Louisiana entity created to facilitate the conveyance of the Louisiana assets of CPU to Aspen. It conducted no business in Massachusetts.

I was appointed lead negotiator for CPU and its owners to negotiate with representatives of Aspen Technology, Inc. ("Aspen") who expressed an interest in acquiring the PAI Business of CPU. I met with Aspen's representatives Steve Williams and Mary Palermo on May 4, 2001 at Aspen's offices in Houston, Texas, and with Steve Williams on May 16, 2001 at CPU's offices in Metairie, Louisiana. Others for Aspen participated by telephone. At the May 16, 2001 meeting, CPU and Aspen reached an agreement in principle to convey the PAI Business to Aspen for $11.3 million of unregistered shares of Aspen stock to be issued to the owners of CPU including F/V. Because the investors in CPU, including F/V, wanted cash for their holdings, we secured a representation and promise from Aspen that the stock would be promptly registered with the SEC in Washington D.C. so that it could be sold.

The work of drafting the RRA and related agreements done by our attorneys Sher Garner Cahill Richter Klein McAlister & Hilbert, L.L.C. was by telephone and e-mail from its law offices in New Orleans, in consultation with me, and we communicated with Aspen's representatives by telephone and e-mail. No one for CPU or F/V, including their attorneys, ever traveled to Massachusetts in connection with the transaction.

On June 15, 2001, we executed various contracts with Aspen to complete the transaction, including a Registration Rights Agreement ("RRA") between Aspen and the owners of CPU, including F/V.

The "closing" of the sale, mentioned in paragraphs 24-27 of the complaint, was done in multiple counterparts, with signatures exchanged by facsimile. Signatures for F/V were faxed from New Orleans to Boston, and signatures for Aspen were faxed from Boston to New Orleans.

The RRA provided, inter alia, that Aspen would register the shares on June 15, 2001, that Aspen warranted that no facts existed that would warrant a delay in the registration, and that Aspen would cause the registration at the SEC to be made effective at the earliest practicable date. Aspen issued 96,629 of its shares to F/V, based on an agreed upon price of $25.586 per share, and Aspen delivered stock certificates to F/V in New Orleans, Louisiana.

Although we were expecting to be able to sell our shares by early July, Aspen did not cause effective registration of the shares until December 14, 2001. F/V acted promptly to sell its shares, but the price had declined dramatically, and F/V sold at approximately $16 per share.

In late 2003, I was subpoenaed to give a deposition and to testify at trial in a lawsuit brought against Aspen by Michael S. Benbow and other parties to the RRA. At that time, I learned that confidential documents had been produced in that litigation that appeared to show that on June 15, 2001, Aspen was not eligible to register shares with the SEC and thus had not been in a position to perform its obligations under the RRA, which led to the extended delay before the shares could be sold.

Since the matter was close to trial, F/V decided to await the resolution of the dispute before deciding on its course of action. However, the matter was not resolved at trial; instead, the parties entered into a confidential settlement. F/V then retained the law firm of Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, LLC and directed it to contact Aspen to discuss F/V's possible claims. On August 11, 2004, our attorneys wrote to Aspen's general counsel requesting an opportunity to discuss the matter.

On August 23, 2004, I learned from F/V's agent for service of process in New Orleans that Aspen had sued F/V in the United States District Court in Massachusetts. Other than being questioned by Aspen's attorney at deposition, neither I nor anyone else from F/V has ever discussed with anyone from Aspen the apparent breach of the RRA by Aspen or its views on the damages F/V suffered. F/V is reluctant to participate in litigation and was never before a party to litigation. F/V was open to all possible resolutions of this matter if it received a cogent explanation from Aspen. The refusal of Aspen to respond to our request for discussion, and Aspen's precipitous action in suing F/V in Massachusetts without any discussion, forced F/V to file a complaint for breach of contract in Louisiana and to defend Aspen's action in Massachusetts.

Futher, affiant sayeth not.

WITNESSES:

_Camille A Sanchez_

_[signature]_

_[signature]_
DAVID J. ERATH

SWORN TO AND SUBSCRIBED TO BEFORE ME
ON THIS 28TH DAY OF SEPTEMBER, 2004.

_[signature]_
NOTARY PUBLIC
STEPHEN T. PERRIEN
Notary Public
Parish of Orleans, State of Louisiana
My Commission is Issued for Life.
Bar No. 22590
Notarial No. 49480

5