UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 NOV -4  P 7: 06

------------------------------ x
ASPEN TECHNOLOGY, INC

        Plaintiff,   :  Civil Action
                  :  No. 04-11830-PBS

v.

F/V SOFTWARE, L.L.C

        Defendant.
------------------------------ x

### AFFIDAVIT OF MARK L. JOHNSON

COMMONWEALTH OF MASSACHUSETTS  )
                                      ) ss.:
SUFFOLK COUNTY                        )

       MARK L. JOHNSON, being duly sworn, deposes and says:

       1.     I am a member of the Corporate Department of Wilmer Cutler Pickering Hale and Dorr LLP (formerly Hale and Dorr LLP) based in Boston, Massachusetts. I am also the chair of the firm's Underwriting Group. I make this affidavit in connection with and in further support of Aspen Technology, Inc. ("Aspen")'s opposition to defendant F/V Software, L.L.C. ("F/V")'s motion to dismiss the complaint in the above-captioned action.

       2.     I have extensive experience in corporate and securities law, particularly in regard to financings, compliance, and acquisitions work. For example, I have acted as counsel on more than one hundred registered public and private offerings.

       3.     Law firms of which I have been a partner, including Hale and Dorr LLP, have served as principal outside corporate counsel for Aspen since 1996, and I was the principal attorney at such firms responsible for representing Aspen during such period.

4. In 2001, I represented Aspen in connection with an acquisition by Aspen of one of the business units of a company called Computer Processes Unlimited, LLC ("CPU"), which at the time was controlled by Frantzen/Voelker Investments, L.L.C., a private equity investment group which was the parent company of F/V Software, LLC ("F/V"), as well as a venture capital company named Advantage Capital Management. For purposes of confidentiality, this transaction was referred to as the "Coppermine" transaction.

5. One of the agreements executed in connection with the Coppermine transaction was a "Registration Rights Agreement" ("RRA"), to which Aspen, F/V and certain others were party. Under the RRA, Aspen agreed to certain arrangements with respect to the registration of the unregistered shares of Aspen's common stock received by F/V and others in connection with the transaction. A true and correct copy of the RRA is attached as "Exhibit A" to Aspen's Complaint For Declaratory Judgment in the above-captioned action.

6. The negotiation of the RRA took place between Hale and Dorr LLP on behalf of Aspen, and Sher Garner Cahill Richter Klein McAlister & Hilbert, L.L.C. of New Orleans, Louisiana ("Sher Garner") on behalf of F/V and the other counterparties.

7. The negotiations themselves were contested, and compromises were made on both sides. Numerous documents relating to the RRA were faxed and sent by electronic mail between the parties to and from Massachusetts. No fewer than nine drafts of the RRA were prepared and sent back and forth from Massachusetts, and more than thirty e-mails were sent from Sher Garner to Hale and Dorr LLP in Massachusetts.

8. In addition to the transmission of such documents, numerous phone calls took place between the attorneys for Aspen and F/V regarding the RRA. There were at least ten

such phone calls over the course of the negotiation, all of which involved agents for F/V (and the other investors) contacting agents for Aspen in Massachusetts.

9. Although the terms of registration rights agreements vary from acquisition to acquisition, such agreements are common in the industry for acquisitions of privately held companies by publicly traded companies. Registration rights agreements relating to stock of publicly traded companies typically are required to be filed with the Securities and Exchange Commission as exhibits to filings made by such companies pursuant to the Securities Act of 1933, as amended, and/or the Securities Exchange Act of 1934, as amended.

*Mark L. Johnson*
Mark L. Johnson

On this 4th day of November, 2004, before me, the undersigned notary public, personally appeared Mark L. Johnson, whom I personally know, who signed the preceding document in my presence, and who swore to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

(official signature and seal of notary)

My Commission expires: August 25, 2011

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand on 11/4/04.