UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------ x

ASPEN TECHNOLOGY, INC

        Plaintiff,        Civil Action
                              No. 04-11830-PBS

v.

F/V SOFTWARE, L.L.C

        Defendant.

------------------------------ x

### AFFIDAVIT OF STEPHEN J. DOYLE

COMMONWEALTH OF MASSACHUSETTS   )
                                              ) ss.:
MIDDLESEX COUNTY                       )

        STEPHEN J. DOYLE, being duly sworn, deposes and says:

        1.     I am General Counsel and Chief Legal Officer of Aspen Technology, Inc., headquartered in Cambridge, Massachusetts ("Aspen"). I make this affidavit in connection with and in further support of Aspen's opposition to defendant F/V Software, L.L.C. ("F/V")'s motion to dismiss the complaint in the above-captioned action, and for the purpose of transmitting to the Court true and correct copies of the following documents attached hereto:

| **Document** | **Tab** |
|---|---|
| May 30, 2001 E-mail from A. Burns of Hale and Dorr to S. Klein of Sher Garner, among others (attaching draft Escrow Agreement) | 1. |
| June 3, 2001 E-mail from M. Monahan of Sher Garner to M. Muscatello of Aspen, among others (attaching draft RRA) | 2. |
| June 4, 2001 E-mail from M. Monahan of Sher Garner to M. Muscatello of Aspen, among others (attaching draft RRA) | 3. |
| June 6, 2001 E-mail from M. Johnson of Hale and Dorr to M. Monahan of Sher Garner, among others (attaching draft RRA) | 4. |

| Document | Tab |
|---|---|
| June 7, 2001 E-mail from M. Monahan of Sher Garner to M. Muscatello of Aspen, among others (attaching draft RRA) | 5. |
| June 9, 2001 E-mail from A. Burns of Hale and Dorr to M. Monahan of Sher Garner, among others | 6. |
| June 11, 2001 (9:41 a.m.) E-mail from M. Johnson of Hale and Dorr to M. Monahan of Sher Garner, among others (attaching draft RRA) | 7. |
| June 11, 2001 (4:56 p.m.) E-mail from D. Erath of F/V to M. Palermo of Aspen | 8. |
| June 12, 2001 (11:51 a.m.) E-mail from M. Monahan of Sher Garner to M. Muscatello of Aspen, among others | 9. |
| June 12, 2001 (11:15 p.m.) E-mail from M. Johnson of Hale and Dorr to M. Monahan of Sher Garner, among others (attaching draft RRA) | 10. |
| June 13, 2001 E-mail from M. Johnson of Hale and Dorr to M. Monahan of Sher Garner, among others (attaching draft RRA) | 11. |
| June 14, 2001 (12:19 p.m.) E-mail from M. Monahan of Sher Garner to M. Muscatello of Aspen, among others | 12. |
| June 14, 2001 (2:19 p.m.) E-mail from M. Monahan of Sher Garner to M. Muscatello of Aspen, among others (attaching draft RRA) | 13. |
| June 14, 2001 (10:59 p.m.) E-mail from P. Foley of Hale and Dorr to M. Monahan of Sher Garner, among others (attaching draft RRA) | 14. |
| June 14, 2001 Investment Rep. Letter from D. Erath of F/V to Aspen | 15. |
| June 14, 2001 Selling Stockholder Questionnaire from D. Erath of F/V to Aspen | 16. |
| Oct. 30, 2001 Letter from E. Taggart to L. Evans of Aspen | 17. |
| Nov. 13, 2001 E-mail from E. Taggart to M. Muscatello of Aspen | 18. |
| Nov. 19, 2001 Fax from M. Muscatello of Aspen to E. Taggart | 19. |
| Jan. 7, 2002 E-mail from M. Muscatello of Aspen to L. Evans of Aspen, among others (redacted for attorney-client privilege) | 20. |
| Jan. 14, 2002 Memo from M. Muscatello of Aspen to T. Dougherty of Skadden, Arps (redacted for attorney-client privilege) | 21. |

| **Document** | **Tab** |
|---|---|
| May 8, 2002 Letter from E. Taggart to L. Evans of Aspen | 22. |
| June 5, 2002 Letter from S. Doyle of Aspen to E. Taggart | 23. |
| June 17, 2002 Petition for Damages, <u>Benbow v. Aspen</u>, No. 582-137 (La. Dist. Ct., Jefferson Parish). | 24. |
| July 23, 2002 Letter from E. Taggart to S. Doyle of Aspen | 25. |
| Aug. 19, 2002, Service of Process and Petition for Damages, in <u>Benbow v. Aspen</u>, No. 582-137 (La. Dist. Ct., Jefferson Parish) | 26. |
| Jan 13, 2004 Dep. of D. Erath in <u>Benbow v. Aspen</u>, No. 02-2881 (E.D. La., Amended Complaint filed Nov. 27, 2002) | 27. |
| Aug. 11, 2004 Letter From E. Taggart to S. Doyle of Aspen | 28. |

2. Further, in early June 2002, I became aware of a May 8, 2002 letter sent by Eugene Taggart of Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, L.L.C. to Lawrence Evans, the CEO of Aspen. I had not seen the letter earlier because of logistical issues relating to my recent transition into the position of Acting General Counsel. I immediately undertook a review of the matter in the hopes of resolving the dispute without litigation.

3. On or about August 19, 2002, much to my surprise, I received notice that Aspen had been served with a Louisiana State Court complaint, <u>Benbow, et al. v. Aspen Technology, Inc.</u>, No. 582-137 (La. Dist. Ct., Jefferson Parish), relating to the very issues I was in process of reviewing for potential settlement. I was also surprised to see that Mr. Taggart had filed the lawsuit, and that he had done so only twelve days after I had sent a letter to him saying that I "just received a copy of your letter to Mr. Evans" and was presently "reviewing the file in order to respond," and thanking him for his understanding.

During the court-ordered settlement negotiations in the <u>Benbow</u> matter, I made this position perfectly clear to F/V's counsel.

5. After deliberation with counsel, I determined to bring a declaratory action against F/V Software, L.L.C. ("F/V") on August 23, 2004. This was based on a good faith business decision that a lawsuit was necessary and inevitable.

6. Among the reasons informing my decision were the following:

 a. <u>First</u>, Aspen faced tremendous uncertainty as to when, if ever, F/V would ultimately decide to bring its claims. F/V had apparently been thinking about suing Aspen for over 3 years, and had openly threatened a possible lawsuit against Aspen on the same facts over eight months prior, yet never sued.

 b. <u>Second</u>, F/V accused Aspen of contract breach in connection with federal securities registration and claimed damages. Further, the uncertainty is particularly acute in this case because the contract at issue is one of ongoing importance to Aspen's business. As a public company, Aspen relies on registration statements in connection with potential acquisitions or related transactions, and the "registration rights agreement" forms a key component of these transactions. The form of registration statement used by Aspen is the transaction at issue here is one that Aspen has used in varying forms in numerous other transactions; and may continue to use in the future. Although it believes its interpretation of the RRA to be correct, F/V's counsel has now challenged its meaning for the second time, and Aspen should be permitted to resolve those issues now rather than wait for a possible lawsuit and enter into additional transactions with the same contract.

 c. <u>Third</u>, Aspen did not, and does not, believe settlement discussions would be fruitful at this stage -- and it never led F/V to think otherwise. It has always been

4

Aspen's position that these claims are frivolous and are contradicted by the plain terms of the RRA itself. This position has been communicated to F/V's counsel on numerous occasions. Further, when Aspen did try to discuss the issue with F/V, F/V refused to meet; and when Aspen tried to have a meeting with F/V's counsel, it was told that they could not meet with Aspen until Aspen made a counteroffer.

                                                        _____
                                                        Stephen J. Doyle

On this 4th day of November, 2004, before me, the undersigned notary public, personally appeared Stephen J. Doyle, whom I personally know, who signed the preceding document in my presence, and who swore to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

_____
(official signature and seal of notary)
Matthew Gannon
My Commission expires: July 18, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand, on 11/4/04.

