**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ASPEN TECHNOLOGY, INC.,** Plaintiff, v. **F/V SOFTWARE, L.L.C.,** Defendant. | **Civil Action No. 04-11830** |

**AFFIDAVIT OF EUGENE G. TAGGART**

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

**BEFORE ME,** the undersigned Notary Public, and in the presence of the undersigned competent witnesses, personally came and appeared:

**EUGENE G. TAGGART**

of the full age of majority, who after being duly sworn, did depose and say:

I am Eugene G. Taggart of the law firm Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, L.L.C. of New Orleans, Louisiana. I represented the plaintiffs in the case *Michael S. Benbow, et al. v. Aspen Technology, Inc.*, C.A. No. 02-2881 in the United States District Court for the Eastern District of Louisiana. Subsequent to the settlement of that litigation, I was asked to represent F/V Software, L.L.C. ("F/V"), and I wrote the letter of August 11, 2004, on behalf of F/V to Aspen Technology, Inc. ("Aspen") that prompted Aspen to file its Complaint for Declaratory Relief. I have been admitted *pro hac vice* in this court to represent F/V. I submit

APPENDIX A

this affidavit to correct erroneous assertions of fact, especially as to my conduct, that appear in Aspen's Memorandum in Opposition to Defendant's Motion to Dismiss (referred to herein as "Aspen Memo") and in the affidavits of Aspen's attorneys.

Aspen mischaracterizes, at Aspen Memo at 5, par. J, my role in a meeting that was held in August 2001. I attended that meeting as courtesy to my son-in-law James B. Bassich, who was one of the developers of the business that was sold to Aspen and who had received stock from Aspen with a representation that the stock would be promptly registered and marketable. All persons and entities that had received stock were present except for two gentlemen who had taken jobs with Aspen in New Orleans. I did not represent F/V or others at that meeting, and other lawyers for other parties were present. The attendees all expressed concern that Aspen had not secured the registration of their stock, but no common plan of action was agreed upon. See Jan. 13, 2004, Dep. of D. Erath at 201-2 (Tab 27 to Affidavit of Stephen J. Doyle).

Mr. Bassich and two of his colleagues, Michael S. Benbow and Robert W. Phillpott, remained very concerned about their inability to market the stock they had received in return for their interests in the business sold to Aspen.

On October 30, 2001, I wrote a letter to Mr. Lawrence B. Evans, Chairman of the Board and Chief Executive Officer of Aspen, referencing the fact that my clients had recently learned that the Securities and Exchange Commission was in the process of questioning prior filings of Aspen that Aspen had represented were in good order when it purchased assets from my clients' company and seeking "an amicable resolution" of the dispute. (See Tab 17 to Affidavit of Stephen J. Doyle.)

In November of 2001, Michael J. Muscatello, Aspen's general counsel, sent me some materials including a time line of events relating to the delay in registering the stock and a letter dated November 13, 2001, to those who had been issued stock, with Aspen's reasons for filing a new registration statement (Exh. A hereto). As set out below, I later learned that this communication was misleading and did not reveal the real reason Aspen needed to file a new registration statement. Compare: Exh. F.

In late December of 2001, I learned that Mr. Bassich and his colleagues received word that Aspen had obtained effective registration of their stock such that it could be marketed. He and others sold their Aspen stock at $16 per share although the original transaction had been built around a $25.586 per share price.

I did engage in various telephone conversations with Mr. Muscatello in late 2001 and early 2002 with the hope that some accommodation could be reached.

Contrary to Aspen's allegations at Aspen memo at 6, par. M (see also Doyle Affidavit at 5) with citation to a truncated copy of a document attested to by neither sender nor recipient (Tab 21 to Affidavit of Stephen J. Doyle), I never refused to meet with Aspen unless it made a counteroffer. I did meet with representatives of Aspen on September 24, 2002, although they had not made any offer of settlement at that time.

In my dealings with Mr. Muscatello and Aspen, I represented Messrs. Benbow, Phillpott and Bassich as reflected in Mr. Muscatello's e-mail dated January 7, 2002 (Tab 20 to Affidavit of Stephen J. Doyle). Later, Kenneth P. Callaway joined the lawsuit filed by Messrs. Benbow, Phillpott and Bassich. I did not represent F/V, and I never told Mr. Muscatello I did.

Things dragged on, and Mr. Muscatello did seem aware that the one year anniversary of the transaction in June might have some legal consequence. In the Spring of 2002, I lost contact with Mr. Muscatello but eventually reached a voice mail recording indicating that he was no longer employed by Aspen, but leaving no contact information.

When I learned of Mr. Muscatello's departure from Aspen, I again wrote on May 8, 2002 to Aspen's chief executive officer and chairman Lawrence Evans advising him of this situation and enclosing a copy of the petition that had been prepared for filing and stated that I needed to "know in the next 10 days" if Aspen still wished to settle the matter (Tab 22 to Affidavit of Stephen J. Doyle). That petition shows Messrs. Benbow, Phillpott and Bassich to be the parties to the possible lawsuit, and it is the same petition ultimately filed in the Twenty-fourth Judicial District Court, Parish of Jefferson, State of Louisiana (Tab 24 to Affidavit of Stephen J. Doyle).

Contrary to Aspen's assertions at Aspen memo at 7, par. N, that petition asserted no claim for breach of the Registration Rights Agreement that is the subject of Aspen's Complaint for Declaratory Relief. It asserts misrepresentation claims that were possibly subject to being time barred in Louisiana if not filed within one year of the misrepresentations.

Mr. Evans did not respond to me, and Aspen has identified no communication from Mr. Evans (or Mr. Muscatello) to any inside or outside attorneys concerning the impending lawsuit by the *Benbow* plaintiffs.

I subsequently, on June 5, 2002, received a telefax of a letter from Stephen J. Doyle identifying himself as Acting General Counsel for Aspen stating that he "just received a copy of your letter to Mr. Evans dated May 8," and that he was "reviewing the file in order to respond."

Mr. Doyle made reference neither to counsel's enclosure of the petition nor to counsel's admonition of May 8 that he needed to know Aspen's position in ten days. I received the original of this same letter on June 17, 2002 in an envelope postmarked in Cambridge and Boston on June 13, 2002 (Exh. B hereto).

I subsequently received on June 24, 2002, an original letter from Mr. Doyle also dated June 5, 2002, but postmarked on June 20, 2002, showing no awareness of the earlier letter dated June 5. In this second letter, Mr. Doyle again states that he "recently received the letter you sent to Mr. Evans" and states that he was "currently traveling in Asia," although the letter bears a personal signature and Cambridge and Boston postmarks. This letter further states that "either I or outside counsel will get back to you shortly" (Exh. C. hereto).

Aspen has identified no communication from Mr. Doyle to any outside counsel asking for a response to me, and I received none.

In his affidavit, Mr. Doyle relates his tardy review of the May 8, 2002 letter to Mr. Evans to "logistical issues relating to my recent transition into the position of Acting General Counsel" Doyle affidavit at 3, par. 2). These "logistical issues" apparently included zero communication from former general counsel Muscatello concerning the *Benbow* dispute. Although Mr. Doyle states in his affidavit that he "immediately undertook a review of this matter in the hopes of resolving the dispute without litigation" (*id.*), this claim is refuted by his letter of June 5 (or June 20) stating that he could not review the matter because of his Asian travels (Exh. C. hereto).

June 15, 2001 was the closing date for the acquisition of the PAI business by Aspen, and Monday, June 17, 2002 was arguably the last day to file timely in Louisiana a petition for

misrepresentations in that transaction. Accordingly, I filed the petition that had been presented to Mr. Evans on May 8, 2002, with a request for a response in ten days, and that had been previously discussed with Mr. Muscatello.

Because I still had hope that once Aspen sorted out its general counsel problems a settlement might be reached, I instructed the court to withhold service. In Louisiana, and I believe elsewhere, such action is regarded as a courtesy, not a secret ploy. In preparing our original memorandum in this matter, I saw the case *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398-99 (D. Mass. 1996) in which this court noted with favor the action of a party in filing suit but withholding service while negotiation continued. In the *Benbow* matter, the filing of suit was compelled to avoid the misrepresentation claims of Mr. Benbow and the other named plaintiffs from being time barred. I sought no advantage for my clients in withholding service, I perceive of no advantage that did accrue, and I have no idea what Aspen is now trying to suggest by its claim of a secret filing.

It is not known when Mr. Doyle returned from Asia, but neither he nor any outside counsel for Aspen contacted me concerning the *Benbow* claims. I wrote to Mr. Doyle on July 23, 2002, pointing out the lack of communication from Aspen despite Mr. Doyle's representations in his letters dated June 5, 2002. I advised Mr. Doyle that while the *Benbow* plaintiffs were still hoping to reach an amicable settlement, they had instructed me "to proceed in court" (Tab 25 to Affidavit of Stephen J. Doyle).

Mr. Doyle did not respond to this letter.

On August 1, 2002, I requested the court to serve Aspen with the *Benbow* petition, and Aspen was in fact served on August 19, 2002.

My records do not enable me to say with precision when Mr. Doyle personally became aware of this lawsuit, but I do know that it was before the August 19, 2002 date Mr. Doyle incorrectly recites in his affidavit, melodramatically recalling his "surprise" (Doyle affidavit at 3). On August 9, 2002, I e-mailed Mr. Doyle concerning possible conference dates, and that e-mail states "Meanwhile, there is no need for Aspen to file an answer to the lawsuit as long as we are working to reach a settlement" (Exh. D hereto).

Subsequently, when Aspen was in fact served, Mr. Doyle's assistant Kim Kading requested that we write on a copy of the citation our agreement that Aspen need not answer, and on August 23, 2002, I wrote on the citation that "There is no need to file an answer on behalf of Aspen while we are attempting to negotiate a settlement of the plaintiffs' claims," and I faxed that to Ms Kading (Exh. E hereto).

A settlement conference took place on September 24, 2002. Neither I nor anyone told Aspen that we would not meet unless Aspen first submitted a counter-offer, and Aspen made no offer before or at that meeting.

Apparently relying on my statement that it need not answer, Aspen did not timely respond to the *Benbow* petition, but, of course, I made no effort to default it.

Aspen never answered the *Benbow* suit. On September 18, 2002, Aspen filed a notice of removal to federal court. This, of course, started the running of a delay period against the *Benbow* plaintiffs and put Aspen in the posture of beginning negotiations with the case placed in

the United States District Court for the Eastern District of Louisiana, a forum it chose over Louisiana state court.

The September 24, 2002 settlement conference was unsuccessful. Litigation proceeded in federal court and on November 27, 2002, the *Benbow* plaintiffs filed an Amending and Supplemental Complaint setting out, *inter alia*, allegations of a breach of the Registration Rights Agreement.

Mr. Doyle never stated to me in any court-ordered settlement conference or anywhere else any complaint concerning the circumstances of the filing of the *Benbow* state court petition as claimed in his affidavit at 4. He never expressed any such concern or complaint in writing. Mr. Doyle's claim that "when Aspen tried to have a meeting with F/V's counsel, it was told that they could not meet with Aspen until Aspen made a counteroffer" (Doyle Affidavit at 5) is demonstrably false. While representing the *Benbow* plaintiffs, I met with Mr. Doyle on September 24, 2002, when Aspen had made no counteroffer. While representing F/V, I sent the letter of August 11, 2004, requesting discussion of F/V's potential claims, and this letter sets no preconditions at all.

Mr. Doyle's accusations in his affidavit and in the Aspen opposition are untrue and seem to be a newly-contrived effort to raise a side issue to deflect the court's attention from his company's actions in contravention of long established policy in this and other courts. If there is a way to be more courteous to a potential defendant than sending its president a copy of a potential lawsuit after the defendant's attorney has disappeared, withholding service of the lawsuit after it has been filed of necessity to avoid prescription while the defendant attempts to

reorganize its legal department, and advising the defendant that it need not answer the lawsuit while settlement discussion takes place, then I simply do not know of it.

Contrary to the allegations of Mr. Daniels' affidavit, neither I nor anyone for my firm submitted "a proposed 'global' settlement of the dispute between Aspen and all potential plaintiffs, including F/V" (Daniels affidavit at 2). This is absurd on its face because it would have included settlement of the claims of parties I did not represent, including potential plaintiffs then employed by Aspen. Aspen's memorandum nonsensically recites that "Mr. Erath confirmed this at his deposition" followed by a quote that says nothing about a global settlement offer (Aspen memo at 8-9).

At a number of places in Mr. Doyle's affidavit (at 5) and Aspen's memorandum (at 9, 11 and 12), it is stated that during negotiations and at other times "Aspen made clear to the Taggart firm that it believed the claims to be without merit." To the contrary, what was clearly communicated to me was that Aspen recognized the serious liability it faced. I have been practicing law for 45 years and when a party continually offers formulaic responses instead of rational discussion, offers misleading and incomplete summaries of events, and generally engages in sharp litigation tactics, I hear a confession of liability. Although F/V was not informed of the substance of the *Benbow* settlement because of its confidentiality provisions, nothing communicated to me or F/V by Aspen gave any indication that it would not discuss F/V's situation in a rational manner after my letter of August 11, 2004.

Late in discovery in the *Benbow* case, documents were produced to the *Benbow* plaintiffs by Aspen that showed that the November 13, 2001 explanation (Exh. A hereto) given to

shareholders and to me for the need to file a new registration with the SEC was misleading. On November 16, 2001, Aspen wrote to the SEC explaining that "it was not eligible" to have made the original filing (Exh. F hereto). Further, Aspen produced a letter from its attorneys to the SEC dated November 2, 2001, admitting that Aspen was not eligible on June 15, 2001, to register shares as promised in the RRA and telling the SEC that harm was likely to befall those who received those shares (Exh. G hereto). This had not been revealed by Aspen General Counsel Muscatello in his communication to me dated November 19, 2001, nor in the letter dated November 13, 2001, to those who had received stock from Aspen. (Compare Exh. A.) Aspen refers to its "open position that these claims were frivolous" (Aspen memo at 12), and it is unclear if it means to include its communication of confidential documents as part of its "open position," but they were presented to me and, earlier, to the SEC, and I considered these admissions as part of Aspen's position. Further, Aspen did not move to dismiss the *Benbow* breach of contract claims as frivolous, it filed and lost motions to dismiss pursuant to Fed.R.Civ.P. 12(b) and 56.

Although these documents were produced by Aspen pursuant to a confidentiality order entered by the court in New Orleans, when Mr. Erath was subpoenaed for deposition and trial, I presented him with these documents on November 25, 2003, after he entered into the appropriate "undertaking" required by the confidentiality order (Erath Dep. at 35-36). Mr. Erath testified these documents were "interesting news to me." *Id.* at 41-42. They are included as exhibits to his deposition.

After the *Benbow* settlement was reached and the case dismissed, Mr. Erath asked us to represent F/V and to contact Aspen concerning its situation. We could easily have filed a lawsuit in federal court in New Orleans, but F/V thought that it should hear Aspen's position in light of the settlement. By Aspen's account, there had been no contact between Aspen and F/V between January 13, 2004 and August 11, 2004 (Aspen memo at 9). It also seemed inappropriate and unprofessional to me to file a lawsuit against Aspen without talking with its counsel after having recently negotiated a settlement that ended two years of litigation. I sent the letter of August 11, 2004 to Mr. Doyle requesting a telephone call to discuss matters. He did not call, and on August 23, 2004, Mr. Erath called to inform us that Aspen had filed and served on F/V's agent for service of process in New Orleans a Complaint for Declaratory Relief that it had filed in Massachusetts.

Futher, affiant sayeth not.

WITNESSES:

Camille A. Sanchez

David J. Hartman

EUGENE G. TAGGART

SWORN TO AND SUBSCRIBED TO BEFORE ME
ON THIS 30th DAY OF NOVEMBER, 2004.

NOTARY PUBLIC

STEPHEN T. PERRIEN
Notary Public
Parish of Orleans, State of Louisiana
My Commission is Issued for Life.
Bar No. 22590
Notarial No. 49480

Aspen Technology, Inc. Ten Canal Park
Cambridge MA 02141-2201 USA
[phone] 617 949 1000
[fax] 617 949 1030
[world wide web] www.aspentech.com
[e-mail] info@aspentech.com

November 13, 2001

To: Persons who Acquired Aspen Common Stock in connection with Aspen's acquisitions of Houston Consulting Group, L.P. and a subsidiary of Computerized Process Unlimited, L.L.C.

From: Michael J. Muscatello, Vice President and General Counsel

Re: Update on Status of Form S-3

Ladies/Gentlemen:

I am writing to update you on the status of the Registration Statement on Form S-3 filed by Aspen Technology, Inc. ("Aspen") on June 15, 2001 (the "Original Form S-3") for the resale of your shares of Aspen Common Stock.

As you know, Aspen completed the two acquisitions referenced above on June 15, 2001 and concurrently filed the Original Form S-3 with the Securities and Exchange Commission (the "SEC"). The SEC elected to review the Original Form S-3, including various reports previously filed by Aspen under the Securities Exchange Act of 1934 and incorporated by reference into the Original Form S-3. The SEC's review of the Original Form S-3 had not been concluded by August 15. On August 15, Aspen's Board of Directors voted to suspend the Original Form S-3 process as permitted by Section 2.1(c)(i) of the Registration Rights Agreements between Aspen and you.

Aspen is now able to move ahead with registering the resale of your shares. Accordingly, Aspen plans to withdraw the Original Form S-3 and file a new Form S-3 (the "New Form S-3") for the resale of your shares.

In order to permit the New Form S-3 to be filed promptly, please confirm or update the number of shares of Aspen Common Stock you beneficially owned as of October 25, 2001 and the number of shares of Aspen Common Stock you intend to offer for sale under the New Form S-3. Given the passage of time since the original filing, it is necessary to update this information because it is not contained in subsequent filings under the Securities Exchange Act of 1934 and thus is not automatically incorporated by reference into the Form S-3.

For your convenience, attached is the Selling Stockholders table from the Original Form S-3. You may email your confirmation or update to me at michael.muscatello@aspentech.com or fax it to me at (617) 949-1717.

Once we have received responses from each selling stockholder, we will file the New Form S-3. We expect that the New Form S-3 will be declared effective within approximately two or three weeks after filing.

Thank for your cooperation and patience. Please feel free to contact me if you have any questions.

Sincerely,

Michael J. Muscatello
Vice President & General Counsel
Phone 617.949.1354
Fax 617.949.1717
e-mail Michael.Muscatello@aspentech.com

Aspen Technology, Inc. Ten Canal Park
Cambridge MA 02141-2201 USA
[phone] 617 949 1000
[fax] 617 949 1030
[world wide web] www.aspentech.com
[e-mail] info@aspentech.com

JUN 17

June 5, 2002

Mr. Eugene Taggart
Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, LLC
2100 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2100

Dear Mr. Taggart:

I just received a copy of your letter to Mr. Evans dated May 8. I am Acting General Counsel for AspenTech and I am reviewing the file in order to respond.

Thank you for your understanding.

Regards,

Stephen J. Doyle
Sr. Vice President and Acting General Counsel

Aspen Technology, Inc. Ten Canal Park
Cambridge MA 02141-2201 USA
[phone] 617 949 1000
[fax] 617 949 1030
[world wide web] www.aspentech.com
[e-mail] info@aspentech.com

By Facsimile and US Mail

June 5, 2002

Mr. Eugene Taggart
Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, LLC
2100 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2100

Dear Mr. Taggart:

I recently received the letter you sent to Mr. Evans. I am Acting General Counsel since Mr. Muscatello left, a position I held before him. I have been quickly briefed on this matter and either I or outside counsel will get back to you shortly. I am currently traveling in Asia and will not return until the 28th. I am generally unfamiliar with your claims though, so I do not have an opinion right now on the merits or our position. Thank you for your understanding.

Very truly yours,

Stephen J. Doyle
Acting General Counsel

**Eugene G. Taggart**

**From:** Eugene Taggart [etaggart@taggartmorton.com] on behalf of EGT
**Sent:** Friday, August 09, 2002 9:51 AM
**To:** 'Stephen Doyle'
**Subject:** RE: Benbow et als. v. Aspen Technology, Inc.

I can't be available next week. I believe we should wait until after you return from your vacation to have our meeting. Meanwhile, there is no need for Aspen to file an answer to the lawsuit as long as we are working to reach a settlement. Please contact me when you return from your vacation so we can select a date for a telephone conference.

Gene Taggart

-----Original Message-----
**From:** **Stephen Doyle [mailto:Stephen.Doyle@aspentech.com]**
**Sent:** Thursday, August 08, 2002 5:39 PM
**To:** EGT
**Subject:** RE: Benbow et als. v. Aspen Technology, Inc.

At this point I think only myself and Mary Palermo from AspenTech and you and your three clients. If we're going to do it on the phone it might be good to show some things via webex. Do you have that kind of capability? Webex is a website that we use to share documents for meetings. You need to be able to access the internet and go online.

We have our Board meeting next Tuesday and will not be able to have a meeting until after that. I plan to go on vacation towards the end of the week and the following week. I'm back the week of the 26th.

Steve Doyle

-----Original Message-----
From: etaggart@taggartmorton.com [mailto:etaggart@taggartmorton.com]
Sent: Friday, August 02, 2002 5:20 PM
To: Stephen Doyle
Subject: Benbow et als. v. Aspen Technology, Inc.

Please let me know who you believe should be at meeting to discuss settlement. I think we should do on telephone initially.

Gene Taggart

EXHIBIT
O
tabbies

**TAGGART, MORTON, OGDEN, STAUB, ROUGELOT & O'BRIEN, LLC**
**ENERGY CENTRE**
**1100 POYDRAS STREET**
**SUITE 2100**
**NEW ORLEANS, LA 70163-2100**
**TELEPHONE: (504)599-8500**

# FAX COVER SHEET

CONFIDENTIALITY NOTICE

THIS FACSIMILE TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN CONFIDENTIAL OR LEGALLY PRIVILEGED INFORMATION. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for return of the documents.

TO: Kevin Kading for
COMPANY: Stephen Doyle at Aspen
DATE: 8-23-02
FILE NUMBER: 20367-2
FAX NUMBER: 1 617 949 1717
FROM: E. Taggart

NUMBER OF PAGES EXCLUDING COVER SHEET: one

MESSAGE:

THIS FACSIMILE IS BEING TRANSMITTED FROM A CANON LASER CLASS 9000.

OUR REPLY FAX NUMBER IS: (504)599-8501 OPERATIONAL 24 HOURS
SENT BY: CSP

********************
*** TX REPORT ***
********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1336 |
| CONNECTION TEL | 916179491717 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 08/23 13:54 |
| USAGE T | 00'42 |
| PGS. SENT | 2 |
| RESULT | OK |

# TAGGART, MORTON, OGDEN, STAUB, ROUGELOT & O'BRIEN, LLC
**ENERGY CENTRE**
**1100 POYDRAS STREET**
**SUITE 2100**
**NEW ORLEANS, LA 70163-2100**
**TELEPHONE: (504)599-8500**

## FAX COVER SHEET

CONFIDENTIALITY NOTICE

THIS FACSIMILE TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN CONFIDENTIAL OR LEGALLY PRIVILEGED INFORMATION. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for return of the documents.

TO: Kevin Kading for
COMPANY: Stephen Doyle at Aspen
DATE: 8-23-02
FILE NUMBER: 20367-2
FAX NUMBER: 16179491717
FROM: E. Taggart

NUMBER OF PAGES EXCLUDING COVER SHEET: one

MESSAGE:

ALAN I. GREEN

020801-8637-8

(101) Citation: PETITION FOR DAMAGES;

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

MICHAEL S. BENBOW, JAMES B. BASSICH AND ROBERT W. PHILLPOTT
versus
ASPEN TECHNOLOGY, INC.

Case: 582-137 Div: "C"
P 1 MICHAEL S. BENBOW

To: ASPEN TECHNOLOGY INC
THRU ITS REGISTERED AGENT: CT CORPORATION SYSTEM
8550 UNITED PLAZA BLVD.
BATON ROUGE LA 70809

CK# 1031
$25.04

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR DAMAGES of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, within FIFTEEN CALENDAR days after the service hereof, under penalty of default.

This service was requested by attorney EUGENE G. TAGGART and was issued by the Clerk Of Court on the 1st day of August, 2002.

Simone Guillot

Simone M Guillot, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

---

020801-8637-8

(101) Citation: PETITION FOR DAMAGES;

**SERVICE INFORMATION**

Received on the ______ day of ________________, ______ and on the ______ day of ________________, ______ served the above named party as follows:

PERSONAL SERVICE on the party herein named ________________________________.

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in this par in the hands of ________________________________, a person of suitable age and discretio residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his residence at the time of said service.

RETURNED: Parish of ________________ this ____ day of ________________, ______.

SERVICE: $ __________
MILEAGE: $ __________
TOTAL: $ __________

BY: ____________________
Deputy Sheriff

August 23, 2002

MEMO TO STEPHEN DOYLE, GENERAL COUNSEL
Facsimile to: 1-617-949-1717/USPS

There is no need to file an answer on behalf of Aspen while we are attempting to negotiate a settlement of the plaintiffs' claims. I will contact you with dates for setting a meeting sometime during the weeks beginning September 9 or 16.

[signature]

Eugene G. Taggart

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
HtG1U+WwxPT1kcxGhFsGkDhcplnI6nG2UFST6KI8H/X5pdYrwrJF1mcTL1F5mfx6
BPwFX9gqu8G1Wux5fizWTQ==

```
<SEC-DOCUMENT>0000950135-01-503620.txt : 20020411
<SEC-HEADER>0000950135-01-503620.hdr.sgml : 20020411
ACCESSION NUMBER:               0000950135-01-503620
CONFORMED SUBMISSION TYPE:      RW
PUBLIC DOCUMENT COUNT:          1
FILED AS OF DATE:               20011116

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:                 ASPEN TECHNOLOGY INC /DE/
                CENTRAL INDEX KEY:                      0000929940
                STANDARD INDUSTRIAL CLASSIFICATION:     SERVICES-COMPUTER PROGRAMMIN
                IRS NUMBER:                             042739697
                STATE OF INCORPORATION:                 DE
                FISCAL YEAR END:                        0630

        FILING VALUES:
                FORM TYPE:              RW
                SEC ACT:
                SEC FILE NUMBER:        333-63208
                FILM NUMBER:            1794116

        BUSINESS ADDRESS:
                STREET 1:               TEN CANAL PARK
                CITY:                   CAMBRIDGE
                STATE:                  MA
                ZIP:                    02141
                BUSINESS PHONE:         6179491000

        MAIL ADDRESS:
                STREET 1:               TEN CANAL PARK
                CITY:                   CAMBRIDGE
                STATE:                  MA
                ZIP:                    02141
</SEC-HEADER>
<DOCUMENT>
<TYPE>RW
<SEQUENCE>1
<FILENAME>b41104rwrw.txt
<DESCRIPTION>WITHDRAWAL REQUEST
<TEXT>
<PAGE>
```

ASPEN TECHNOLOGY, INC.
TEN CANAL PARK
CAMBRIDGE, MASSACHUSETTS 02141

November 16, 2001

EXHIBIT
F

VIA EDGAR

Securities and Exchange Commission
450 Fifth Street, N.W.
Judiciary Plaza
Washington, D.C. 20549

RE: Aspen Technology, Inc.
Registration Statement on Form S-3
(Registration No. 333-63208)

Ladies and Gentlemen:

In accordance with Rule 477(a) promulgated under the Securities Act of 1933, as amended, Aspen Technology, Inc. (the "Registrant") hereby requests that the Securities and Exchange Commission (the "Commission") consent to the withdrawal of its Registration Statement on Form S-3 (Registration No. 333-63208), as amended, that was originally filed with the Commission on June 15, 2001 (the "Registration Statement").

The Registrant is requesting withdrawal of the Registration Statement because it determined, after the date of the original filing of the Registration Statement, that it was not eligible to use Form S-3. No shares of the Registrant's common stock have been sold under the Registration Statement.

The Registrant further requests that, pursuant to Rule 477(c), an order with the date of the granting of the withdrawal be included in the file for the Registration Statement in the following manner: "Withdrawn upon the request of the Registrant, the Commission consenting thereto."

If you have questions with respect to this letter, please call the undersigned at (617) 949-1000 or David A. Westenberg, Esq. of the law firm of Hale and Dorr LLP at (617) 526-6000.

Sincerely,

ASPEN TECHNOLOGY, INC.

By: /s/ Lisa W. Zappala

Name: Lisa W. Zappala
Title: Senior Vice President & Chief Financial Officer

cc: Michael J. Muscatello, Esq.
Mark L. Johnson, Esq.
David A. Westenberg, Esq.

</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>

-----END PRIVACY-ENHANCED MESSAGE-----

HALE AND DORR LLP
COUNSELLORS AT LAW

www.haledorr.com
60 STATE STREET • BOSTON, MA 02109
617-526-6000 • FAX 617-526-5000

DAVID A. WESTENBERG

617-526-6626
david.westenberg@haledorr.com

November 2, 2001

BY FACSIMILE: (202) 942-9544

Loryn Zerner, Esq.
Division of Corporation Finance
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

Aspen Technology, Inc. - Request for Waiver
Commission File No. 0-24786

Dear Ms. Zerner:

I am writing to provide additional information regarding the voice message I left you yesterday.

## I. WAIVER REQUEST

This letter seeks a waiver by Aspen Technology, Inc. ("Aspen") from compliance with General Instruction G.(3) of Form 10-K under the circumstances more fully described below where (1) Aspen did not amend its Annual Report on Form 10-K for the fiscal year ended June 30, 2001 (the "Form 10-K") to include Part III information or incorporate by reference to *definitive* proxy materials containing such information within 120 days after its fiscal year end but (2) Aspen publicly disseminated substantially all required Part III information within such 120-day period by filing *preliminary* proxy materials on October 18, 2001. This letter also seeks confirmation that the Registration Statement on Form S-3, Registration No. 333-63208, filed by Aspen on June 15, 2001 (the "Form S-3"), may be declared effective upon satisfaction of the Staff's remaining comments.

## II. FACTS

On September 28, 2001, Aspen filed the Form 10-K with the Securities and Exchange Commission (the "Commission") via EDGAR. The Form 10-K was filed and accepted by the Commission prior to the deadline for such filing. In the Form 10-K, Aspen stated that it incorporated by reference the Part III information required by Form 10-K to Aspen's Proxy Statement for its 2001 Annual Meeting of Stockholders.

ATBEN 006046
CONFIDENTIAL

BOSTON NEW YORK PRINCETON RESTON WASHINGTON LONDON* MUNICH* OXFORD*
Hale and Dorr LLP is a Massachusetts Limited Liability Partnership and includes Professional Corporations * an independent joint venture law firm

EXHIBIT
G

On October 18, 2001, Aspen filed with the Commission via EDGAR its preliminary proxy materials, which included all of the information required by Part III of Form 10-K with the one exception described in the following paragraph.

On October 30, 2001, Aspen filed definitive proxy materials. On October 31, 2001, Aspen discovered that beneficial stock ownership information for one director (Joseph Boston) had been inadvertently omitted from the preliminary and definitive proxy materials. Aspen filed amended definitive proxy materials on November 1, 2001, and these materials are expected to be mailed to stockholders on or about November 5, 2001.

Also on October 31, 2001, Aspen realized that the initial definitive proxy materials were filed *one day* after the 120-day period following Aspen's fiscal year. In view of this information and its possible impact on the Form S-3, Aspen reviewed the timing of its prior year proxy filings and determined that the preliminary proxy materials for its 2000 annual meeting had also been filed *one day* after the 120-day period following Aspen's fiscal year.

## III. REASONS WHY ASPEN BELIEVES THE REQUESTED WAIVER SHOULD BE GRANTED

Aspen takes its public reporting obligations seriously and has not previously failed to make any filings in over seven years as a public company. Aspen firmly believes that investors were not prejudiced or otherwise placed at a disadvantage because the Part III information required by Form 10-K was not contained in the Form 10-K when it was filed on September 28, 2001. The Form 10-K clearly referenced that Part III information would be incorporated by reference to the proxy statement for the 2001 Annual Meeting of Stockholders. All Part III information (with the one exception noted in the following sentence) was then included in the preliminary proxy materials filed with the Commission via EDGAR on October 18, 2001, and was therefore publicly disseminated and available, well within the 120 day-period contemplated by General Instruction G to Form 10-K. The only exception is that beneficial stock ownership information for one director (Joseph Boston) was inadvertently omitted from the preliminary proxy materials but had previously been disclosed in his Form 5 filed on August 14, 2001.

In the event Aspen is unable to maintain its eligibility to use Form S-3 as a result of its technical non-compliance, significant harm will result to Aspen and Aspen's stockholders. Pursuant to registration rights agreements entered into with the former stockholders of two companies acquired by Aspen on June 15, 2001, Aspen is required to register for public resale the 562,455 shares issued to these stockholders as expeditiously as possible. As required by these agreements, Aspen filed the Form S-3 on June 15, 2001 in good faith, unaware that it technically was not then eligible for use of a Form S-3. If Aspen is precluded from having the Form S-3 declared effective upon satisfaction of the Staff's remaining comments, it will be required to file a new registration statement on Form S-1 for the resale of these shares, which would require substantially more time, effort and expense. In addition, if Aspen loses its Form S-3 eligibility, its own access to

the capital markets would be made more difficult, time consuming and expensive, all to the detriment of Aspen's stockholders. Because all required Part III information omitted from the Form 10-K was timely made publicly available in other SEC filings, Aspen believes these significant adverse consequences to Aspen and its stockholders are not warranted given the absence of actual or potential investor harm.

## IV. CONCLUSION

We respectfully request a waiver from technical compliance with the instructions set forth in Instruction G.(3) of Form 10-K based on the facts outlined in this letter and that the Form S-3 be allowed to be declared effective upon satisfaction of the Staff's remaining comments. Aspen believes that significant harm will result to Aspen and Aspen's stockholders if the requested waiver is not granted. For the reasons described above, Aspen believes that there is no actual or potential public harm which would favor denying the requested waiver, and that Aspen and its stockholders will suffer an unduly punitive result if Aspen is precluded from Form S-3 eligibility based on the outlined facts.

Please telephone the undersigned at (617) 526-6626 if you have any questions concerning this letter.

Very truly yours,

David A. Westenberg

cc: Michael J. Muscatello, Esq.
Mark L. Johnson, Esq.