UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-CV-11830-PBS

ASPEN TECHNOLOGY, INC. ,
Plaintiff

V.

F/V SOFTWARE, LLC
Defendant

**REPORT AND RECOMMENDATION ON
MOTION TO DISMISS
(Docket # 7)**

ALEXANDER, M.J.

On August 23, 2004, plaintiff Aspen Technology, Inc., ("Aspen"), a Delaware corporation with its principal place of business in Cambridge, Massachusetts, filed a complaint for declaratory relief against defendant FV Software, LLC ("FV"), a Louisiana company with its principal place of business in New Orleans, Louisiana.  FV, in turn, filed a motion to dismiss Aspen's complaint on the basis that the Court has neither subject matter jurisdiction over Aspen's complaint nor personal jurisdiction over FV.

The matter is before this Court pursuant to an Order of Reference requesting a Report and Recommendation on FV's motion to dismiss.  After a hearing on the motion and careful consideration of the parties' asseverations, both

oral and written, and for the reasons set forth more fully below, this Court RECOMMENDS that FV's motion to dismiss be DENIED.

## BACKGROUND

Aspen's complaint for declaratory relief stems from Aspen's purchase of a business unit ("the PAI Business") from Computerized Processes Unlimited ("CPU").  CPU was controlled by FV's parent company, Frantzen/Voelker Investments, LLC, and by another entity as well, Advantage Capital Management.  Beginning in March 2001 and culminating in June 2001, Aspen engaged in negotiations to purchase the PAI business from CPU.  After executing a purchase agreement, CPU conveyed its interest in the PAI Business to Aspen in exchange for 400,000 shares of unregistered stock in Aspen.

FV received shares of Aspen's stock as "designees for CPU without consideration."  Although FV was not a party to the purchase agreement between CPU and Aspen, FV was a party to a Registration Rights Agreement ("RRA") executed with Aspen, and signed on June 15, 2001.  Under the RRA, Aspen provided for "certain arrangements with respect to the registration of shares under the Securities Act of 1933."  Additionally, § 4.4 of the RRA specifies that Massachusetts law governs the RRA.

According to Aspen, the RRA contained no guarantee about the date of the effective registration of the shares received by FV.  Aspen also contends that the RRA contained no guarantee that the shares would be worth a particular price at the time of registration.  In June 2001, Aspen began the process of registering the shares with the SEC by filing a Form S-3.  On August 15, 2001, however, with the registration process still incomplete, Aspen's Board of Directors, pursuant to the terms of the RRA, voted to temporarily suspend the registration of the shares because of other, non-related, business activities.  Aspen provided FV with written notice of the vote.  According to a letter sent by Aspen to the SEC in November 2001 requesting a waiver of Form-10K compliance, Aspen was "not eligible" as of June 15, 2001, to register shares as stated under the RRA.  The letter stated that without such a waiver, "significant harm" might befall Aspen and its stockholders.  On December 14, 2001, the SEC declared the registration of the Aspen shares effective.

Aspen contends that during the month of August 2001, FV "secretly" met with attorneys from the New Orleans law firm Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, LLC ("Taggart Morton"), to discuss the possibility of suing Aspen for breaching the RRA.  The basis for the alleged breach was Aspen's failure to promptly register the shares, forcing FV to obtain and sell the shares at a

lower-than-anticipated price.  FV decided that it did not want to pay for litigation itself, and decided against bringing suit against Aspen at that time.

Thereafter, on October 30, 2001, Eugene Taggart, of Taggart Morton, sent a letter to Lawrence Evans, the Chairman and CEO of Aspen, stating that his client, CPU, had learned that the SEC was in the process of reviewing prior filings that Aspen had represented were in good order.  CPU's officers and directors expected to receive stock pursuant to the RRA.  Mr. Taggart contends that at the time that he wrote the letter, he represented only CPU, and did not at that point represent FV.  Over the next two months, Mr. Taggart and Michael Muscatello, then Aspen's General Counsel, exchanged documents and a few e-mails related to the dispute between Aspen and FV.  Aspen contends that Mr. Muscatello engaged in good faith negotiations with Mr. Taggart to resolve the dispute, while Mr. Taggart contends that Aspen misrepresented its position vis-a-vis the stock registration and refused to follow up on his requests to meet and discuss a resolution to the dispute.  Eventually, CPU filed a suit against Aspen in the Eastern District of Louisiana ("the Benbow litigation") alleging a breach of the RRA for failure to promptly register the shares of stock.  The Benbow litigation settled on July 22, 2004, when the parties filed a stipulation for judgment dismissing all claims.

Shortly thereafter, on August 11, 2004, Mr. Taggart, sent Aspen's new general counsel, Stephen Doyle, a letter (the "Taggart letter") that stated:

> We have been asked to represent F/V Software, L.L.C. to recover damages it sustained from the failure of Aspen Technology, Inc. to perform a certain Registration Rights Agreement dated June 15, 2001.
>
> On June 15, 2001, Aspen Technology Inc. issued 96,629 shares of its stock to F/V Software, L.L.C. and promised to register those shares in accordance with the Registration Rights Agreement between the parties. The failure of Aspen Technology, Inc. to perform its obligations under the Registration Rights Agreement caused significant monetary damages to F/V Software, L.L.C.
>
> We would like to discuss this matter with you in the hope that this matter can be resolved without litigation. Please call me at your earliest convenience.

According to Mr. Taggart, this letter was not designed to warn Aspen of a potential suit, or to set any preconditions for a settlement. Aspen never responded to FV's letter. On August 23, 2002, Aspen filed its complaint for declaratory relief with this Court seeking a declaration that Aspen did not breach the RRA, and that it did not cause FV's alleged injury. In response, FV filed a suit alleging a breach of the RRA in the Eastern District of Louisiana, on August 31, 2004. Additionally, FV filed the current motion to dismiss asserting that this Court has

5

neither subject matter jurisdiction over Aspen's complaint nor personal jurisdiction over FV.

**ANALYSIS**

### Subject Matter Jurisdiction Over Aspen's Complaint for Declaratory Relief

The Declaratory Judgment Act ("the Act") states, in part, that:

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). A court will only have subject matter jurisdiction over a declaratory judgment action "if a case or controversy existed between the parties at the time the complaint was filed." Davox Corp. v. Digital Sys. Int.'l, Inc., 846 F.Supp. 144, 147 (D. Mass. 1993) (citing Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 882 (Fed. Cir. 1985)). A party filing a claim for declaratory relief must also have had a "reasonable apprehension" that the defendant was planning to initiate a lawsuit. Hudson County News Co. v. Metro Assoc., Inc., 141 F.R.D. 386 (D. Mass. 1992).

A determination as to whether a controversy existed at the time a complaint for declaratory relief is filed is made by examining the "totality of the circumstances." Davox, 846 F. Supp. at 146 (controversy existed since neither party disputed that plaintiff was marketing allegedly infringing product when plaintiff filed for declaratory relief).  Given the previous Benbow litigation, in which a company similarly-situated to, and represented by the same counsel as, FV brought suit against Aspen, and the Taggart letter, which states unequivocally that FV hired Mr. Taggart to recover damages related to Aspen's "breach" of the RRA, the "totality of circumstances" suggest that a controversy existed between FV and Aspen at the time that Aspen filed its complaint for declaratory relief.

The Court must also determine whether Aspen, as the declaratory judgment plaintiff, had a "reasonable apprehension" that a threatened suit would transpire. Hudson County, 141 F.R.D. at 390 (citing Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 439 F.2d 871, 874 (1st Cir. 1971)).  In Hudson County, this Court stated that:

> a plaintiff's showing of a reasonable apprehension of
> facing a lawsuit by the declaratory judgment defendant is
> to be insufficiently substantial where the defendant's
> communication of the possibility of a lawsuit to the
> plaintiff is phrased in the equivocating language of
> potentialities or is susceptible to varying interpretations.

Id.  Although the Court was satisfied that a controversy existed between the parties, the Court was not satisfied that Hudson County had a reasonable apprehension of a lawsuit at the time of its filing for declaratory relief.  Id. at 392.  In the present case, however, the Court is satisfied that the "reasonable apprehension" requirement is met.  The Taggart letter explicitly stated that Mr. Taggart's firm had been retained by FV to recover monetary damages related to Aspen's alleged breach of the RRA.  Although FV asserts that it was interested in trying to negotiate a settlement with Aspen for Aspen's alleged breach, Aspen could certainly have reasonably apprehended that FV was contemplating a lawsuit.

Even if the requirements of an existing controversy and the "reasonable apprehension" of a lawsuit are satisfied, this Court has considerable discretion to determine whether to exercise declaratory jurisdiction.  Id. at 386.  See also EMC Corp. v. Norand Corp., 89 F.3d 807, 809 (Fed. Cir. 1996); Lexington Ins. Co. v. The City of Phoenix, Arizona, No. 96-10319, 1996 WL 463672, *3 (D. Mass. 1996).  When two identical actions are pending concurrently in the federal courts, "the first-filed action is generally preferred, even if it is a request for declaratory judgment."  Holmes Group Inc., v. Hamilton Beach/Proctor Silex, 249 F. Supp. 2d 12, 15 (D. Mass. 2002).  A court may decide, however, against deferring to a first-filed action if convenience favors the second-filed action, particularly if

8

convenience for the defendant favors the defendant's choice of forum. Davox, 846 F.Supp. at 146 (citing Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122, 125 (D. Mass. 1998) (court gave preference to the second-filed action because of special circumstances)).

While it is clear that Massachusetts provides a more convenient forum than Louisiana for Aspen, since its principal place of business is here, FV has offered no convincing arguments that it would be severely inconvenienced by having to litigate in this Court.[1]  A controversy existed at the time that Aspen filed its complaint, and Aspen had a reasonable apprehension that FV would file suit against Aspen alleging that Aspen violated the RRA.  For these reasons, and because no circumstances warrant affording preference to the second-filed action, this Court finds that it has subject matter jurisdiction over Aspen's complaint.

**Personal Jurisdiction Over FV**

In addition to contesting this Court's jurisdiction over Aspen's complaint, FV also asserts that the Court does not have personal jurisdiction over FV.  A court may only exercise personal jurisdiction over a foreign defendant "if such jurisdiction is authorized by the state long-arm statute, and its exercise does not

---

[1] The issue of convenience and fairness to a party opposing the choice of forum is addressed more fully infra in the Court's discussion of personal jurisdiction and due process.

offend the Due Process Clause of the Fourteenth Amendment." Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC, 273 F. Supp. 2d 172, 175 (D. Mass. 2003). The Massachusetts long-arm statute states, in pertinent part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a).

Section 3(a), in turn, known as the "transacting any business" clause, is to be interpreted as broadly as the federal constitution permits, Tatro v. Manor Care, Inc., 416 Mass. 763, 771 (1994), but is directed toward only the purposeful, deliberate, and successful solicitation of business from Massachusetts residents. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). To show that a defendant's conduct fits within § 3(a), a plaintiff must demonstrate that the defendant transacted business in the state, and that the claim presented arises from the transaction in question. Merced v. JGL Indus., Inc., 170 F. Supp.2d 65, 71 (D. Mass 2001) (citing Tatro, 416 Mass. at 767 and Raleigh Rug Co. v. R.A. Civitello Co., 23 Mass. App. Ct. 1025, 1026 (1987)).

After determining that the disputed transaction satisfies the requirements of § 3(a), the court proceeds to its Due Process analysis to determine whether the defendant has the appropriate "minimum contacts" with the forum state. This

10

analysis encompasses three factors: (1) whether the plaintiff's claims relate to or arise out of the defendants's contacts with the forum; (2) whether the defendant's contacts represent a purposeful availment of the privileges and benefits of conducting business in the forum; and (3) whether the exercise of jurisdiction over the defendant is reasonable in light of the "gestalt" factors.  Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F.Supp.2d 134, 138 (D. Mass. 1999).  In the First Circuit, the gestalt factors include the burden on the defendant if forced to appear in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining efficient resolution of the complaint, and the common interests of all sovereigns in promoting substantive social policies.  Id. at 140 (citing Pritzker v. Yaro, 42 F.3d 53, 63-64 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995)).

### The Massachusetts Long-Arm Statute

Telephone calls, e-mails, and faxes can amount to "transacting business" under § 3(a).  Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F.Supp. 2d 102, 110  (D. Mass).  In Workgroup, a Massachusetts plaintiff engaged a Nevada defendant in negotiations to hold a conference at its hotel, and the defendant responded with telephone calls, e-mails, and faxes "in Massachusetts for the

purpose of negotiating the terms of the contract." Id. at 110. After the plaintiff sued for breach of contract, this Court held that the defendant's contacts satisfied the "transacting business" requirement even though the contact was initiated by the Massachusetts plaintiff and the defendant never physically entered Massachusetts to discuss the terms of the contract. Id.

Although no one from FV's offices in New Orleans traveled to Massachusetts during the negotiation of the RRA, negotiations did occur between FV and Aspen (headquartered in Massachusetts) via telephone and e-mail. Additionally, Aspen's claims arise directly out of the transaction between it and FV, that is, out of the RRA. FV's activities are sufficient to satisfy the "transacting business" requirement under § 3(a).

In determining whether to exercise personal jurisdiction in a breach of contract case, a court "must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or its breach." Champion, 273 F.Supp. 2d at 177 (citing Philips Exeter Acad. v. Howard Philips Fund, 196 F.3d 284, 289 (1st Cir. 1999)). A defendant's pre-transaction visit to Massachusetts, as well as the transmissions back and forth of business plans with the plaintiff, can satisfy the "relatedness test." Id. at 176. Aspen's complaint stems from the RRA. Furthermore, FV

exchanged e-mails, phone calls, and faxes with Aspen during the negotiation of the RRA, and the Court is satisfied that the requirements of the state long-arm statute are met.

### Due Process

In addition to determining that the requirements of Massachusetts' long-arm statute are met, this Court must also ensure that exercising jurisdiction over a foreign defendant does not violate due process. To satisfy the "purposeful availment" prong of the Due Process analysis in breach of contract cases, the First Circuit employs a "contract-plus analysis" under which "prior negotiations and contemplated future consequences, along with . . . the parties' actual course of dealing . . . must be evaluated in determining whether the defendant has minimum contacts with the forum." U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610 (1st Cir. 2001) (quoting Burger King Corp v. Rudzewicz, 471 U.S. 462, 479 (1985)). A defendant's contacts with the forum state must be "deliberate and not random." See Champion, 273 F.Supp. at 177. In addition, both federal and Massachusetts courts have held that clauses designating the governing state law should be enforced unless the objecting party "clearly can show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." R.W. Granger & Sons, Inc. v. Rojac Co., Inc., 885 F.Supp. 319,

321 (D. Mass. 1995) (quoting The Bremen v. Zapata Off Shore Co., 407 U.S. 1, 15 (1972)).

In Champion, the defendant entered into a business agreement that "expressly contemplated" an ongoing relationship with Champion's Massachusetts office where "payments were processed and records kept." Champion, 273 F.Supp. at 177. In addition, the defendant's single visit to Massachusetts, as well as the sharing of certain business information, was "instrumental in forming the agreement whereby [the defendant] was to pay commissions to Champion." Id. FV's contacts with Aspen during the negotiation of the RRA, which included the sharing of business information via telephone, e-mails and faxes, contemplated a relationship in which a Massachusetts company would send shares of its stock to FV.

Additionally, the choice of Massachusetts law as the governing law for the RRA suggests that FV purposely availed itself to the laws of the Commonwealth. A defendant's contacts with a state render the possibility of being brought to court there as "foreseeable" when a clause in an agreement between the parties designates Massachusetts law as governing the contract. Id. FV concedes that Massachusetts law governs the RRA; it was therefore foreseeable that FV could be called into court here.

     The final component of the Due Process analysis requires an examination of the five gestalt factors to determine whether the exercise of personal jurisdiction would be unreasonable or "offend traditional notions of fair play and substantial justice."  Fairview, 56 F. Supp. at 140.  The well-known factors are as follows: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.  Id.

     A defendant attempting to avoid the burdens of litigating in a foreign jurisdiction must prove that such a forum "is onerous in a special, unusual, or other constitutionally significant way."  Champion, 273 F.Supp. 2d at 178 (quoting Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 718 (1st Cir. 1996)).  Massachusetts has an interest in ensuring that contracts entered into by its residents are given full effect, and a foreign defendant's small size is not necessarily sufficient to establish that the defendant is subject to a burden greater than any other non-resident defendant.  Id.

     FV's assertions about its small size and limited resources are insufficient to show that litigating in Massachusetts would be unusually onerous.  Furthermore,

15

since the RRA is governed by Massachusetts law, the Commonwealth has an interest in adjudicating the dispute, and seeing that Aspen, a Massachusetts company, obtains effective relief.  Finally, the fact that Aspen has a presence in Louisiana is immaterial as FV has provided no evidence to show that litigating in Massachusetts would be unreasonable.

The fifth gestalt factor, the interests of all sovereigns in promoting substantive social policies, is not addressed by either party, and does not appear to weigh in either party's favor.  For all of these reasons, Aspen has satisfied the requisite factors to determine that this Court can exercise personal jurisdiction over FV.

**CONCLUSION**

For the foregoing reasons, this Court RECOMMENDS that the District Court DENY FV's motion to dismiss.

SO ORDERED.

| | |
|---|---|
| 4/29/05 | /S/ Joyce London Alexander |
| Date | United States Magistrate Judge |