UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASPEN TECHNOLOGY, INC.,<br>                     Plaintiff,<br><br>v.<br><br>F/V SOFTWARE, L.L.C.,<br>                     Defendant. | Civil Action<br>No. 04-11830 |

### OBJECTIONS OF DEFENDANT F/V SOFTWARE, L.L.C. TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Pursuant to Fed.R.Civ.P. 72(a), defendant F/V Software, L.L.C. ("F/V") enters these objections to the Report and Recommendation on Motion to Dismiss ("Report") submitted by Magistrate Judge J. L. Alexander. F/V renews its motion to dismiss the Complaint for Declaratory Judgment filed by Aspen Technology, Inc. ("Aspen"). F/V makes three arguments: First, it objects to the failure of the Report to consider whether this Court should exercise its discretion to hear Aspen's Complaint and to conclude that it should not; second, F/V objects to the Report's determination that the Court had subject matter jurisdiction over the Complaint; and, third F/V objects to the Report's determination that the Court's exercise of specific personal jurisdiction over F/V would comport with Due Process.

**1.  The Report does not address the unique and substantial discretion granted the Court that should guide it to dismiss Aspen's Complaint as an abuse of the Declaratory Judgment Act.**

Aspen seeks a declaratory judgment from this Court that Aspen did not breach a Registration Rights Agreement ("RRA" or "Agreement") it entered into with F/V. Aspen filed its Complaint in response to a letter from F/V asserting damages from the failure to register shares as required by the Agreement and requesting some discussion "in the hope that this matter

125300.2

can be resolved without litigation." Report at 5. The Report offers no guidance to the Court on the suitability of its exercise of its "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act. *Wilton v. Seven Falls Company,* 515 U.S. 277, 286 (1995).

Even if F/V had not moved to dismiss, "a federal court … must independently satisfy itself about the suitability of granting declaratory relief...." *Lexington Ins. Co. v. The City of Phoenix, Arizona,* No. 96-10319, 1996 WL 463672 at *3 n.4 (D. Mass. July 31, 1996), citing *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 498 n.11 (1st Cir. 1992). If a case does not serve the public policies of the Declaratory Judgment Act, the court may dismiss it even if it is within its jurisdiction. *Wilton,* 515 U.S. at 284*; EMC Corp. v. Norand,* 89 F.3d 807, 814 (Fed. Cir. 1996); *Waters Corp. v. Hewlett-Packard Co.,* 999 F. Supp. 167, 174 (D. Mass. 1998). The court may dismiss the declaratory judgment action even where it was "first filed" among competing cases. *EMC v. Norand Corp.,* 89 F.3d at 813; *EMC Corp. v. Roland*, 916 F. Supp. 51, 53 (D. Mass. 1996)*; Davox Corp. v. Digital Sys. Int'l, Inc.,* 846 F. Supp. 144, 147 (D. Mass. 1993). The court may even decline to resolve jurisdictional questions and then exercise its discretion to dismiss an action as inappropriate under the Declaratory Judgment Act. *EMC v. Norand Corp.,* 89 F.3d at 809; *EMC v. Roland,* 916 F. Supp. at 53.

The Report ignores this Court's obligation and the substantial argument made by F/V that Aspen's declaratory judgment action was an abuse; the Report only addresses F/V's arguments on subject matter and personal jurisdiction. The Report actually contains demonstrable justification for this Court to decline to hear Aspen's Complaint, but the Report does not recognize this. The Report only discusses the Court's discretion in the context of the relative conveniences of the parties and subject matter jurisdiction. Report at 8-9.

125300.2

2

After related litigation by other parties on the same contract in the United States District Court for the Eastern District of Louisiana settled, F/V wrote to Aspen asserting similar rights and requesting some discussion to avoid litigation. As noted in the Report, "Aspen never responded to F/V's letter." Instead, Aspen filed a declaratory judgment action in this Court. Report at 5.

These facts alone are sufficient to dismiss the Complaint. This Court has previously held that, in light of the strong public policies that favor settlement efforts, such a complaint should not be heard. *Davox Corp.,* 846 F. Supp. at 147. The court concluded that "[i]n light of the present, strong public policy discouraging unnecessary litigation, it would be inconsistent with the reformed legal culture and conduct the Act and the Plan seek to promote for this court to exercise discretionary jurisdiction." *Id*. Accord *EMC Corp. v. Norand Corp.,* 89 F.3d at 814-15 (declaratory judgment action dismissed when filed in response to letter requesting further negotiations, citing *Davox* and numerous cases from other jurisdictions); *Waters Corp.,* 999 F. Supp. at 174 (declaratory judgment action dismissed when filed as part of heavy-handed response to single letter, citing *EMC Corp. v. Norand* and *Davox*); *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398-99 (D. Mass. 1996) (declaratory judgment action allowed where suit was filed but not served, and plaintiff took affirmative steps to resolve matter without litigation, citing *Davox* with approval).

The Report also finds that Aspen filed its Complaint for Declaratory Judgment in anticipation of litigation and that it chose the forum more convenient to it. Report at 7-9. Again, the Report fails to recognize that these findings should compel the Court to decline to hear the Complaint. This Court and all federal courts condemn the use of the declaratory judgment action as a tactical device to achieve a preferred forum. This Court was especially harsh in its criticism

of the misuse of the declaratory judgment action for forum shopping in *Lexington Ins. Co. v. The City of Phoenix, Arizona,* 1996 WL 463672 (D. Mass. July 31, 1996). In that case, in response to a threatening letter, the insurer filed suit in Massachusetts seeking a declaratory judgment as to its liability under an insurance contract. The Court found that the declaratory judgment plaintiff's purpose was to achieve its "preference in choice of forum" and that "permitting this suit to go forward would be contrary to the public interest." *Id*. at *2. The Court said that the plaintiff "proves itself too clever by half," *id.* at *1, had used a "litigation ploy," *id.* at *2, and that this was "sharp practice and it deserves the name." *Id.*

      A federal court should defer to the right of an injured party to choose the forum in which to litigate the action. "The declaratory judgment remedy is *not a tactical device* whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse." *Hudson County News Co.*, 141 F.R.D. 386, 392 (D. Mass 1992), quoting *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C. 1988) (emphasis in original). In *EMC v. Roland*, the Court also cited the unfairness of depriving the natural plaintiff of her choice of forum, and stated that the "Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions," and "[i]ndeed, the misuse of the Declaratory Judgment Act to gain procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action." 916 F. Supp at 55 (citations and internal quotations omitted).

      Aspen alleges nothing in its complaint to justify its use of the declaratory judgment action. In *Lexington*, the Court noted that the "true plaintiff" had been made defendant in the declaratory judgment action, and that "[s]uch a pre-emptive strike misuses the declaratory relief action. Declaratory Judgment properly is provided where the natural defendant in a potential

legal controversy is injured by the 'uncertainty and insecurity' of a delay in its resolution." 1996 WL 463672 at *2 (citations omitted). The Court said "there was not a scintilla of evidence that Lexington was motivated to bring suit by any concern about the possibility of uncertainty or delay: no investment decision or other business ramifications were claimed to turn on the outcome of this fairly routine dispute..." *Id.* Aspen alleges no such ramifications, and the Report finds none. Aspen's only reason to file this declaratory judgment action was to preempt the natural plaintiff, F/V, of its choice of forum and thus to secure tactical advantage in any litigation and the associated and inevitable attempted negotiation of a resolution.

Professors Wright, Miller, and Kane, in describing the purpose of the Declaratory Judgment Act, state "[i]t permits actual controversies to be settled *before* they ripen into violations of law or a breach of contractual duty." 10B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998) (emphasis added) (citing, *inter alia*, *Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.C.N.J. 1993)) (declaratory judgment is inappropriate solely to adjudicate past conduct). See also *Board of Regents for Northwest State Univ. v. MSE Corp.*, 1990 WL 212098 * 3 (W.D. Mo. Nov. 20, 1990) (action dismissed where plaintiff had "shown no way in which a declaratory judgment would enable it to change its conduct to avoid damages which have not yet accrued"); *Hanes Corp. v. Millard*, 531 F.2d 585, 592 (D.C. Cir. 1976) (action dismissed where plaintiff was "simply in the position of one expecting to be sued for past alleged transactions"); *Hudson,* 141 F.R.D. at 391-392

Here, Aspen asks this Court merely to decide whether its past conduct in 2001 in failing to register F/V's stock was a breach of a contract. Complaint at 2-3. The Report does not address this misuse of the declaratory judgment action.

125300.2

5

This Court should reject the Report and find that "to exercise its discretionary jurisdiction in this case would create 'an incentive structure that is inconsistent with the public interest in preserving declaratory proceedings for cases closer to the central objectives of declaratory proceedings.'" *EMC Corp. v. Norand Corp.*, 89 F.3d at 810.  Aspen and the Report, if adopted by the Court, would punish F/V for seeking to resolve a potential dispute without litigation and reward Aspen for filing a declaratory judgment action as to past conduct without any showing of business necessity and without any effort to secure a non-litigious resolution, in order to be certain that any litigation occurred in a favored forum.  A federal court should not "abet" such behavior.  *Davox*, 846 F. Supp. at 148.  Neither Aspen nor the Report has identified a case where a federal court allowed a declaratory judgment action to proceed under circumstances such as these, and this Court should not be the first.

**2.    The Report confuses Aspen's determination to sue with a reasonable apprehension of being sued and erroneously finds subject matter jurisdiction.**

Although the Report correctly recites that the court only has subject matter jurisdiction over a declaratory judgment action if a case or controversy existed at the time the complaint was made, Report at 6, the Report incorrectly applies the law and misperceives Aspen's own position to find that Aspen had a "reasonable apprehension" of a lawsuit at the time of its filing for declaratory relief. Report at 8.  Although Aspen did recite these magic words in its opposition, it also, in order to justify its heavy handed use of the declaratory judgment action, specifically denied such a belief.  It averred: "Aspen faced significant uncertainty as to when, if ever, F/V would ultimately decide to bring its claims."  Aspen Technology's Memorandum in Opposition to Defendant's Motion to Dismiss (November 4, 2004) at 10.  The affidavit of Aspen's counsel is even more explicit in denying any expectation of a suit by F/V.  Affidavit of Stephen Doyle at 4. F/V had previously declined to sue Aspen in August 2002 when Aspen had been unable to

register expeditiously as required by the RRA, and F/V did not file suit but sought negotiation after it learned through confidential documents produced in the *Benbow* litigation that Aspen had not even been eligible to register the stock as promised. Aspen argued, although it had not pled in its complaint, that its business was impacted by the uncertainty of litigation. *Id.* The Report does not find that there was any such threat posed by F/V's letter, and this should have compelled a determination that a declaratory judgment action was not ripe. *Lexington Ins. Co.,* 1996 WL 463672; *Hudson County News Co.*, 141 F.R.D. at 391.

Aspen further admitted that it decided to initiate litigation after receipt of F/V's letter because it did not "believe [that] settlement discussions would be fruitful *at this stage." Id.* at 11 (emphasis added); Affidavit of Stephen Doyle at 5 (emphasis added). A party's decision to initiate litigation to create negotiation advantage is not the equivalent of having a reasonable apprehension of being sued. At the time Aspen filed its Complaint, it did not have a reasonable apprehension that it would be sued, and the Court did not have subject matter jurisdiction.

The Report cites and quotes *Hudson County* but inexplicably does not follow it. Report at 7-8. In that case, possible litigation was mentioned in a letter along with other solutions, and the Court found the plaintiff's showing "to be insufficiently substantial where the defendant's communication of the possibility of a lawsuit is phrased in the equivocating language of potentialities." *Id.* at 390. Inconsistent with *Hudson County*, the Report finds reasonable apprehension only from the fact that F/V retained counsel with experience in the *Benbow* litigation and that the letter refers to damages, while seeking discussion. Report at 8. *Hudson* also holds that, "It is only where the potential lawsuit by the declaratory judgment defendant is likely to chill a plaintiff's activities that courts will require a less substantial showing of reasonable apprehension to find the dispute ripe." *Id*. at 391 (citations omitted). Neither

125300.2                                         7

Aspen's Complaint nor the Report sets out any likelihood that Aspen's activities would be chilled.

The Report also gives too much deference to Aspen's success at being "first-filed" and only considers whether "convenience factors" favor the second action. Report at 8-9. The first-filed doctrine is not to be given great weight, *Lexington,* 1996 WL 463672 at *1, and the whole point of the body of law setting out the proper exercise of a court's discretion to hear declaratory judgment actions is to decide whether the declaratory judgment plaintiff's preemptive strike should be rewarded. Convenience factors are not determinative; instead, the inquiry is whether the action is an appropriate use of the declaratory judgment action. Should the Court reach this question, it should conclude that it lacks subject matter jurisdiction to consider Aspen's complaint.

**3.     The Report incorrectly applies the tests for specific personal jurisdiction and erroneously finds personal jurisdiction over F/V.**

This Court set out the proper determination of specific jurisdiction in *Levin v. Harned*, 292 F. Supp. 2d 220, 225 (D. Mass. 2003) (J. Saris):

> Specific personal jurisdiction can be asserted over a defendant only if: (1) the claim "directly relates to or arises from the defendant's contacts with the forum"; and (2) "the contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." If these two requirements are met, then (3) the court must look at the "overall reasonableness of the exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction." *Id.* at 225 (internal citations omitted).

The Report looks to the relatedness inquiry only in the context of its examination of the expansive Massachusetts Long Arm Statute, Report at 11-12, although the relatedness inquiry is a due process issue. *Levin* at 225. The extent of the Report's analysis of the relatedness inquiry is a mere recitation that "Aspen's complaint stems from the RRA," with citation to *Champion*

*Exposition Servs., Inc. v. Hi-Tech Elec., LLC*, 273 F. Supp. 2d 172 (D. Mass. 2003). Report at 12. Yet, that case specifically states that the "mere existence of a contractual relationship will not be sufficient." *Champion*, 273 F. Supp. 2d at 177. The notion that the mere existence of a contract with a resident of the forum state establishes personal jurisdiction over the other party has clearly been rejected. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985); *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001). In other words, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (attorney's contract with plaintiff in forum state insufficient for personal jurisdiction).

Aspen's complaint raises no issue as to the confection of the contract or F/V's performance or F/V's actions in Massachusetts; instead, Aspen seeks to put at issue its own efforts to perform its obligations. These efforts have no relationship to F/V's contacts with Massachusetts. In that sense, Aspen's complaint is more like that in *U.S. Rest. Props. Operating L.P. v. Aloha Petroleum, Ltd.*, No. 3:01-0987, 2001 WL 1568762 (N.D. Tex. Dec. 5, 2001). There, the court dismissed the plaintiff's declaratory judgment action for lack of personal jurisdiction because the plaintiff's declaratory judgment action sought a declaration whether *plaintiff* was bound by *its* obligation in a contract with the defendant and, the complaint, therefore, did not arise out of or relate to the *defendant*'s contacts with the forum.

In its "purposeful availment" discussion, the Report acknowledges the need for a "contract plus analysis," Report at 13, but the Report makes no such analysis. The Report cites *Champion* and acknowledges that, there, "the defendant 'expressly contemplated' an ongoing relationship with Champion's Massachusetts office" and visited Massachusetts, Report at 14, but

125300.2                                         9

the Report does not find that any on-going relationship between F/V and Massachusetts was contemplated by F/V and acknowledges that F/V never visited Massachusetts. Far from establishing an "on-going relationship" between the parties or with Massachusetts, the RRA was part of a sale of a Louisiana business completed on the date of its execution, with delivery of shares to Louisiana, and requiring the registration of shares by Aspen with the SEC in Washington that very day, with Aspen obligated "to cause such [r]egistration…to be declared effective by the Commission at the earliest practicable date." Exhibit A to Complaint, Registration Rights Agreement, par. 2.3(a)(i). In contrast, in *Champion,* the defendant had formed a joint venture with plaintiff to provide electrical services to customers of plaintiff over a number of years, 273 F. Supp. 2d at 173, and in *Burger King* there was a "franchise contract, which envisioned a twenty-year relationship and continuing contacts with the forum," 471 U. S. at 479.

The Report points to the choice of law provision in the contract as suggesting that it was "foreseeable" that F/V would be called into court here, again citing *Champion.* Report at 14. But in *Champion* the choice of law was relevant because the parties contemplated an on-going business relationship, it did not establish such a relationship. 273 F. Supp. 2d at 178. A choice of law provision without more is insufficient to confer jurisdiction. *Burger King*, 471 U.S at 482. The Report also gives undue weight to e-mails, telephone calls, and faxes during the negotiation of the contract. Such communications between two parties without more are insufficient to establish jurisdiction. *Nicholas v. Buchanan*, 806 F.2d 305 (1st Cir. 1986) (telephone and mail communications found insufficient); *accord Stuart v. Spademan*, 772 F.2d 1185, 1193-1194 (5th Cir. 1985) (communications in developing a contract found insufficient).

125300.2                                                    10

Moreover, what contact F/V had with Massachusetts was "random, fortuitous, or attenuated" and insufficient to demonstrate purposeful availment. *Burger King Corp.*, 471 U.S. at 475; *Keeton v. Hustler Magazine, Inc.,* 465 U.S.770, 774 (1984). F/V did not sell its business to Aspen because Aspen resided in Massachusetts; this was a completely random circumstance. F/V had no business interests in Massachusetts; its interest was in selling its Louisiana business.

These facts do not establish that F/V foresaw that it might be sued in Massachusetts. Rather, they indicate that F/V's contact with the forum was random, fortuitous, and attenuated because such contact only resulted from Aspen's choice to reside there. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-723 (6th Cir. 2000) (affirming dismissal for lack of personal jurisdiction and observing that the defendant's visits to the forum occurred solely because the plaintiff chose to be headquartered there and not because the defendant sought to further his business there or create future consequences there).

In *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 292 (1st Cir. 1999), the First Circuit explained the fact that "the defendant willingly entered into a tendered relationship does not carry the day" on purposeful availment. In *Sawtelle*, 70 F.3d at 1392, the non-resident defendants' knowledge that they were entering an attorney-client relationship with the resident plaintiff did not establish voluntary submission to personal jurisdiction in the plaintiff's forum.

As stated by this Court:

> The purposeful availment test requires consideration of whether the defendant's contacts with the forum represent a purposeful availment of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws in making the defendant's involuntary presence in the state courts foreseeable. *Levin,* 292 F. Supp. 2d at 229.

125300.2

11

F/V never sought to conduct activities in Massachusetts, and the purposeful requirement test is not met.

The Report recognizes that, to comport with due process, the exercise of personal jurisdiction must be reasonable in light of the "gestalt" factors. Report at 13. *Levin* sets out the proper analysis:

> Reasonableness is determined by the so-called gestalt factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. The reasonableness stage of the jurisdictional analysis evokes a sliding scale: "[T]he weaker the plaintiff's showings on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Moreover, a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness: "[t]he Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." 292 F. Supp. 2d at 225 (internal citations omitted).

In analyzing the first factor, the defendant's burden of appearing, the Report imposed a burden on F/V to show a burden that "is onerous in a special, unusual, or other constitutionally significant way," Report at 15, citing *Champion*, which in turn cited *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708,718 (1st Cir. 1996). But in both of those cases, the courts recognized that a lesser burden would be appropriate to protect a defendant from harassing litigation. *Champion* at 179; *Nowak* at 718. F/V submits that this declaratory judgment action designed to preempt it as the natural plaintiff of its choice of forum is a species of harassment. In considering the gestalt factors in *Levin*, this Court noted that an injured party is entitled to its choice of forum, 292 F. Supp. 2d at 229, and here the injured party is F/V.

In *Fairfield Mach. & Tool co., Inc. v. Oakbrook Int'l, Inc.,* 56 F. Supp. 2d 134, 140 (D. Mass. 1999), relied on by the Report at 15, the Court took into account the fact that the plaintiff was a "fairly small company" and "obviously would be severely inconvenienced by having to travel to Michigan to try this case." 56 F. Supp. 2d at 140. But the *Fairfield* court also acknowledged that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *Id*. (citation omitted). Here, the true plaintiff is F/V, a fairly small company that would be severely inconvenienced by having to travel to Massachusetts to try this case. In contrast, Aspen is a national corporation that actually has offices in the Eastern District of Louisiana, has previously litigated in Louisiana, and its Louisiana and Massachusetts attorneys have already made appearances in the breach of contract suit of F/V pending in Louisiana.

The Report does not address, as a gestalt factor, declaratory judgment action plaintiff Aspen's "interest in obtaining convenient and effective relief." As shown above, Aspen has an office in Louisiana and previously litigated the very contract it puts at issue here in federal court in Louisiana, reaching a settlement satisfactory to it. Aspen's interests can be satisfied by convenient and effective relief in Louisiana. The Report fails to address the gestalt factor described as the "judicial system's interest in obtaining the most effective resolution of the controversy." Here, the United States District Court for the Eastern District of Louisiana has already entertained litigation by other parties to the RRA against Aspen on the very contract Aspen brings to this Court. That court resolved numerous discovery issues and confected an elaborate pre-trial order. That court had set the matter for trial before Aspen and the *Benbow* plaintiffs settled. F/V's new complaint was assigned to the judge who had handled the *Benbow* litigation although he has stayed F/V's case pending this Court's resolution of F/V's motion to

dismiss. The judicial system's interest in effective resolution of Aspen's dispute with F/V can best be served in the Eastern District of Louisiana, especially in light of Aspen's unseemly and abusive use of the declaratory judgment action in an effort to avoid that forum.

If the Court reaches this question, it should find that it lacks personal jurisdiction over F/V.

**4.   The Report recites "facts" not supported by the allegations of the complaint nor by affidavit.**

The Report erroneously makes certain factual statements not supported by the allegations of the Complaint nor by the affidavits filed by the parties. Although none of these errors is dispositive of the issues raised by the motion to dismiss, F/V is constrained to object lest its failure to do so have some preclusive effect. See Fed.R.Civ.P. 72 (a). These errors include:

a.   The suspension of Aspen's efforts to register F/V's shares was not "pursuant to the terms of the RRA." Report at 3. The RRA only permitted suspension of registration after registration had become effective. See RRA at 3, Par. 2.1(c).

b.   CPU was never a client of Taggart Morton, and CPU never filed suit against Aspen and was not a party to the *Benbow* litigation in the Eastern District of Louisiana. Report at 4. See Affidavit of Eugene G. Taggart at 2-3.

c.   On August 11, 2004, Stephen Doyle was not Aspen's "new general counsel." Report at 5. Mr. Doyle was general counsel beginning June 2002, and had negotiated the *Benbow* settlement for Aspen. See Affidavit of Stephen Doyle at 3-4.

**5.   Conclusion**

For all these reasons and for the reasons previously set forth in its memoranda in support of its motion to dismiss, defendant F/V Software, L.L.C. prays that the complaint of Aspen Technology, Inc. be dismissed.

**6.     Request for Oral Argument**

   Pursuant to L. R. 7.1(D), F/V requests oral argument on its motion to dismiss and its objections to the Report.

>                                    F/V SOFTWARE, L.L.C.
>                                    By its attorneys,
>
>                                    ____/s/ Marc J. Goldstein_____
>                                    Ruth T. Dowling (BBO #645568)
>                                    Marc J. Goldstein (BBO #636228)
>                                    PALMER & DODGE LLP
>                                    111 Huntington Avenue
>                                    Boston, MA 02199
>                                    (617) 239-0100
>                                    Fax: (617) 227-4420
>
>                                          and
>
>                                    Eugene G. Taggart (LA Bar No. 12627)
>                                    Terrence G. O'Brien (LA Bar No. 10147)
>                                    TAGGART, MORTON, OGDEN, STAUB, ROUGELOT &
>                                    O'BRIEN, LLC
>                                    1100 Poydras Street, Suite 2100
>                                    New Orleans, LA 70163-2100
>                                    (504) 599-8500
>                                    Fax: (504) 599-8501